STATE OF NORTH CAROLINA v. VERNON BOONE

No. 51

(Filed 15 December 1977)

**1. Searches and Seizures § 1— Fourth Amendment protection—when available**

Capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the area was one in which there was a reasonable expectation of freedom from governmental intrusion; thus, what a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection, but what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.

**2. Searches and Seizures § 1— open field—no Fourth Amendment protection**

Generally, an open field is not an area entitled to Fourth Amendment protection.

**3. Searches and Seizures § 1— tractor under lean-to in open field—taking serial number reasonable**

A lean-to shed located in an open field belonging to defendant's wife and located 100 feet from public school grounds but near no residence and therefore not a part·of any curtilage was not an area in which there was a reasonable expectation of freedom from governmental intrusion, and an officer's checking without a warrant of the serial number of a tractor located under the lean-to was reasonable.

**4. Criminal Law § 116.1— failure of defendant to testify—instructions**

While it is the better practice, in instructing on defendant's failure to testify, to use the words of the statute, *i.e.,* "shall not create any presumption against him," G.S. 8-54, the use of the words "should not" is not such error as to require a new trial.

**5. Criminal Law § 24— not guilty plea—imposition of greater sentence**

Statement of the trial judge, expressed by him in open court, that "he .would be compelled to give the defendant an active sentence due to the fact that the defendant had pleaded not guilty and the jury had returned a verdict of guilty as charged" indicated that the sentence imposed was in part induced by defendant's exercise of his constitutional right to plead not guilty and demand a trial by jury; therefore, the case must be remanded for entry of a proper judgment without consideration of defendant's refusal to plead guilty to a lesser offense.

APPEAL by defendant pursuant to G.S. 7A-30(1) from the decision of the Court of Appeals, reported in 33 N.C. App. 378, 235 S.E. 2d 74, finding no error in the trial before *McConnell, J.,* at the 19 July 1976 Criminal Session of GUILFORD Superior Court,

High Point Division, but vacating judgment and remanding for proper sentencing.

Defendant was tried and convicted of feloniously receiving stolen property, a 1974 Ford diesel 3000 tractor having a value of $6,000. From judgment imposed, defendant appealed to the Court of Appeals. That court found no error in the trial but remanded for proper sentencing.

The State offered evidence tending to show that on or about 30 June 1975, a blue 1974 Ford diesel 3000 tractor, serial number C471023, valued at $6,000, was stolen from the lot of Neuse Tractor Company in Dudley, North Carolina. Later, this tractor was discovered under a lean-to shed on a 19.9 acre field belonging to defendant's wife. On 30 June 1975, the day the tractor was reported missing, defendant obtained notarization of a bill of sale for this tractor. The bill of sale said "sold to Vernon Boone by Mr. W. G. Dawkins." Using this bill of sale, defendant borrowed $2,400 from a lending institution and gave a purchase money security interest in the tractor in return.

Other facts pertinent to decision are set out in the opinion.

Defendant did not testify in his own behalf nor did he offer evidence.

*Attorney General Rufus L. Edmisten by Associate Attorney Nonnie F. Midgette for the State.*

*Boyan and Slate by Clarence C. Boyan for defendant appellant.*

MOORE, Justice.

Prior to the introduction of evidence, defendant moved to suppress all evidence obtained by Officer W. F. Clay's entry onto defendant's property without a valid search warrant, and all evidence obtained thereafter as the result of the allegedly illegal search.

Judge McConnell conducted a *voir dire* hearing. Both the State and defendant offered evidence. At the conclusion of the hearing, based on the evidence presented, Judge McConnell made the following findings of fact and conclusions of law:

"1. That on October 22, 1975, Detective J. E. Tobin of the High Point Police Department received a phone call from an informer saying that a stolen blue Ford farm tractor was at defendant's farm on Elder Road in Guilford County;

2. That as a result of this information Detectives Tobin and B. W. Rich, also of the High Point Police Department, drove that afternoon to defendant's farm, parking in the drive of a neighbor to the farm; walking on Allen Jay Elementary School grounds adjacent to defendant's wife's farm and along the barbed wire fence 48 inches high strung around defendant's wife's farm, Detective Tobin saw a blue Ford farm tractor parked under a shed annexed to a barn in open view;

3. That the farm consists of nineteen and nine-tenths acres with only the barn located on it; that the field was enclosed by a fence; there was no dwelling upon the property; Defendant's residence is on a city street and approximately one and two-tenths miles from the property and approximately one and one-half miles from the barn; that the only evidence as to ownership of the land is that the deed to the farm property is solely in the name of Dorothy T. Boone, the wife of the defendant;

4. That Detectives Tobin and Rich entered the property from another side of the field because of easier access to the barn and the annexed shed under which the tractor was located;

5. That Detective Tobin copied from the tractor the serial number C471023 and the model number C1013C; that the serial number was cast onto the body and both the serial number and model number were located on a metal plate attached to the inside of the hood of the tractor;

6. That on October 22, 1975, Detective Tobin contacted Inspector William F. Clay of the Enforcement and Theft Division of the North Carolina Department of Motor Vehicles for assistance in gathering information on the tractor through the Police Information Network, a system of information collection;

7. That Inspector Clay went with Detective Tobin and Rich back to the defendant's farm to recheck the serial number and the model number. All three officers entered the property by crossing at the same point of the fence that had been crossed the preceding day;

8. That after rechecking the serial number and the model number Inspector Clay entered the serial number on the Police Information Network by car radio; that he was informed that the tractor was listed as stolen from Neuse Tractor Company in Dudley, North Carolina, between 8:30 PM, June 29, 1975, and 7:00 AM, June 30, 1975, along with a 1971 Ford truck, serial number C76EUF51519, 1975 North Carolina license number CM8561;

9. That having failed to contact defendant on October 22, 1975, Inspector Clay called on the defendant at his home the morning of October 23, 1975, and asked him to come to the North Carolina Highway Patrol office in High Point to discuss the stolen tractor located on the defendant's farm;

10. That the defendant was present the morning of October 23, 1975 at the North Carolina Highway Patrol Office in High Point; that Inspector Clay, with Detective Thompson present, read the defendant his constitutional rights but the defendant refused to sign a paper acknowledging his rights; that the defendant stated to Inspector Clay and Detective Thompson that he knew his constitutional rights; that he did not need or want an attorney present; and that he would answer any questions posed by the officers;

11. That the defendant told Inspector Clay and Detective Thompson in the interview at the North Carolina Highway Patrol Office on October 23, 1975 that the tractor had been at his farm for approximately three months; that the defendant further stated that he had received the tractor from a black male, referred to as "Judge," who had driven the tractor onto the defendant's used car lot, Boone's Auto Plaza, 116 South Main Street, High Point, North Carolina; that "Judge" said he wasn't using the tractor and said the defendant could use the tractor and drove it to the gate of the defendant's farm; that the defendant drove it to the barn and parked it under the shed; that the defendant then stated

that he did not have any money in the tractor and that if it was stolen then he did not want it on his property;

12. That the tractor was brought to the North Carolina Highway Patrol Office in High Point by an employee of the defendant and surrendered the tractor to Inspector Clay;

13. That as a result of a telephone call to Inspector Clay at his residence on November 8, 1975 Inspector Clay went to Dealers Wholesale, Incorporated, 347 South Main Street, High Point, North Carolina, on November 10, 1975; that Inspector Clay learned from Robert Foster, President of Dealers Wholesale, Incorporated, that the defendant presented on June 30, 1975 a notarized bill of sale on Boone's Auto Plaza stationery selling to the defendant from W. G. Dawkins a 1974 Ford 3000 tractor, diesel, serial number C471023; that the bill of sale was notarized by Jimmy Malpass, Notary Public, on June 30, 1975; that the bill of sale showed a cash selling price of three thousand, eight hundred and fifty dollars; that the defendant borrowed twenty-four hundred dollars, signing the chattel mortgage agreement with Dealers Wholesale Incorporated with Glenn Berger, Agent, of Dealers Wholesale, Incorporated as witness;

14. That on November 10, 1975, Inspector Clay and Detective Rich went to Boone's Auto Plaza, the business of the defendant; that the defendant was informed that they wanted to discuss the stolen tractor and also informed him again of his constitutional rights; that again the defendant stated that he knew his rights; that he did not need or want an attorney present, and that he would answer any questions; that the defendant stated to the officers that the bill of sale was made out solely to borrow money; that W. G. Dawkins was a white male who happened to be in his office when the bill of sale was manufactured and that he had intended to leave one number out of the serial number purposefully; that Inspector Clay informed the defendant that the serial number on the bill of sale was identical to the serial number of the stolen tractor; that the defendant then stated that he would not answer any more questions and demanded that the officers leave the car lot;

15. That Inspector Clay and Detective Rich obtained a warrant of arrest for the defendant and arrested the defendant in the afternoon of November 10, 1975.

Based on the foregoing findings of fact, the Court makes the following conclusions of law:

1. That there was not a search in the meaning of the Fourth Amendment of the United States Constitution; that the tractor was found under a shed attached to a barn in plain and public view; that the barn was located in an open field and not within the curtilage of the defendant since there was not a dwelling place within the enclosure where the barn was located; that the residence of the defendant was one and one-half miles from the barn and the farm on which the barn was located was not contiguous to defendant's residence; furthermore, the property was not owned by the defendant but was solely in the name of his wife, Dorothy T. Boone. The officers were therefore not required to obtain either a search warrant or permission to inspect the serial number of the tractor since the tractor was in plain view and under an open lean-to.

2. That the statements made by the defendant on October 23, 1975 to Inspector Clay and Detective Thompson and on November 10, 1975 to Inspector Clay and Detective Rich were given freely, voluntarily, and with full knowledge and understanding of his constitutional rights and the defendant indicated that he freely and voluntarily waived such rights and stated he did not need or want an attorney present.

IT IS NOW, THEREFORE, ORDERED that all evidence concerning a Ford tractor with serial number C471023 is competent evidence in the trial of this case, and any statements made by defendant to Inspector Clay pertaining to said Ford tractor, serial number C471023, are also competent evidence."

Following the *voir dire* hearing, the State introduced testimony before the jury which was substantially in accord with Judge McConnell's findings of fact.

The threshold question is the legality of Officer Clay's entry onto the land of defendant's wife and his obtaining the serial

number from the tractor parked under the lean-to shed. The Fourth Amendment to the Constitution of the United States provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation and particularly describing the place to be searched and the persons or things to be seized."

G.S. 15A-974 provides that upon timely motion evidence must be suppressed if its exclusion is required by the Constitution of the United States or the Constitution of the State of North Carolina.

[1] Before resorting to the rules of search and seizure, it must first be determined whether the conduct complained of was within the sphere of Fourth Amendment protection. Though title to the real property on which the stolen tractor was discovered was in defendant's wife's name, it is clear that "capacity to claim the protection of the [Fourth] Amendment depends not upon a property right in the invaded place but upon whether the area was one in which there was a reasonable expectation of freedom from governmental intrusion. . . ." *Mancusi v. DeForte*, 392 U.S. 364, 20 L.Ed. 2d 1154, 88 S.Ct. 2120 (1968). Thus, what a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection, but what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. *Katz v. United States*, 389 U.S. 347, 19 L.Ed. 2d 576, 88 S.Ct. 507 (1967).

The crucial issue, therefore, is whether in light of all the circumstances the open lean-to shed under which the tractor was parked was an area in which defendant had a reasonable expectation of freedom from governmental intrusion. The shed was located in an open field on a 19.9 acre tract of land, some 100 feet from public school grounds, a place where the public had a right to be. The shed was an open-air type structure, and the tractor was visible from the school property. Defendant's home was located in the town of High Point, some 1½ miles from the property. There was no residence within the fenced-in area, nor was there a residence contiguous thereto. The lean-to and the barn to

which it was attached were the only structures within the fenced-in area. There were no "No Trespassing" signs on the property.

Whether a search or seizure is reasonable is to be determined on the facts of each individual case. *State v. Howard*, 274 N.C. 186, 162 S.E. 2d 495 (1968); *Cooper v. California*, 386 U.S. 58, 17 L.Ed. 2d 730, 87 S.Ct. 788 (1967); *Preston v. United States*, 376 U.S. 364, 11 L.Ed. 2d 777, 84 S.Ct. 881 (1964).

[2] Generally, an open field is not an area entitled to Fourth Amendment protection. The "open field" doctrine was enunciated by Justice Holmes in *Hester v. United States*, 265 U.S. 57, 68 L.Ed. 898, 44 S.Ct. 445 (1924). That case involved the discovery of illegal whiskey in a field by officers who went on defendant's premises without a search warrant. Speaking for the Court, Mr. Justice Holmes said:

> "It is obvious that, even if there had been a trespass, the above testimony was not obtained by an illegal search or seizure. . . . The only shadow of a ground for bringing up the case is drawn from the hypothesis that the examination of the vessels took place upon Hester's father's land. As to that, it is enough to say that, apart from the justification, the special protection accorded by the 4th Amendment to the people in their 'persons, houses, papers, and effects' is not extended to the open fields. The distinction between the latter and the house is as old as the common law. 4 Bl. Com. 223, 225, 226."

As is noted in *Rosencranz v. United States*, 356 F. 2d 310 (1st Cir. 1966), ". . . This amendment [the Fourth] speaks of the 'houses' of persons, which word has been enlarged by the courts to include the 'curtilage' or ground and buildings immediately surrounding a dwelling. . . . The reach of the curtilage depends on the facts of a case. . . ."

More recent decisions by the federal courts have not abrogated the principles set forth in *Hester v. United States*, *supra*. Thus, in the recent case of *United States v. Capps*, 435 F. 2d 637 (9th Cir. 1970), the Court said: "[I]nformation gained as a result of a civil trespass on an 'open field' area is not constitutionally tainted, nor is the search and seizure which ultimately results from acquiring that information. *Hester v. United States*, 265 U.S. 57, 59, 44 S.Ct. 445, 68 L.Ed. 898 (1924); *Wattenburg v.*

*United States*, 388 F. 2d 853, 856 (9th Cir. 1968); *McDowell v. United States*, 383 F. 2d 599, 603 (8th Cir. 1967); *Giacona v. United States*, 257 F. 2d 450, 456 (5th Cir.), *cert. denied*, 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed. 2d 104 (1958); *Koth v. United States*, 16 F. 2d 59, 61 (9th Cir. 1926)."

This principle has been applied by this Court on prior occasions. In *State v. Spencer*, 281 N.C. 121, 187 S.E. 2d 779 (1972), the defendant contended that the officer involved had engaged in an illegal search and seizure because he had illegally visited a field where marijuana was growing, prior to the issuance of a search warrant. Justice Branch, speaking for the Court, stated:

"Answer to this attack on the validity of the search warrant is found in *State v. Harrison*, 239 N.C. 659, 80 S.E. 2d 481:

" 'It seems to be generally held that the constitutional guaranties of freedom from unreasonable search and seizure, applicable to one's home, refer to his dwelling and other buildings within the curtilage but do not apply to open fields, orchards, or other lands not an immediate part of the dwelling site. Machen, The Law of Search and Seizure, page 95 (citing *Hester v. United States*, 265 U.S. 57, 44 Sup. Ct. 445, 68 L.Ed. 898); Cornelius, Search and Seizure, Second Edition, page 49; 48 C.J.S., Intoxicating Liquors, section 394, page 630, *et seq.*; 30 Am. Jur., Intoxicating Liquors, section 528, page 529; Anno. 74 A.L.R. 1454, where numerous cases on this point are collected, among them being: *Simmons v. Commonwealth*, 210 Ky. 33, 275 S.W. 369; *S. v. Cobb*, 309 Mo. 89, 273 S.W. 736; *Penney v. State*, 35 Okla. Crim. Rep. 151, 249 P. 167; *Sheffield v. State*, 118 Tex. Crim. Rep. 329, 37 S.W. 2d 1038; *Field v. State*, 108 Tex. Crim. Rep. 112, 299 S.W. 258.' "

[3] Accordingly, we hold, in light of the circumstances in this case, that the lean-to shed located in an open field was not an area in which there was a reasonable expectation of freedom from governmental intrusion, and that the checking of the serial number by Officer Clay was reasonable. This assignment of error is overruled.

In view of our holding that the obtaining of the serial number from the tractor was not an unreasonable search, we need not consider whether the search was justified by the fact that the tractor was in plain view. *See* 7 Strong, N.C. Index 2d, Searches and Seizures § 1, and cases cited therein.

Defendant's other assignments of error are without merit. There was ample evidence to go to the jury. The trial judge, on motion to suppress and after a hearing, made extensive findings of fact and conclusions of law in compliance with G.S. 15A-977(f). Defendant expressly requested that the trial judge charge the jury on defendant's failure to testify. The judge charged:

> "The laws of the State of North Carolina provide that the defendant may choose as he sees fit whether or not to testify. The fact that he does not testify does not create any presumption against him nor should it be considered by you against him."

[4] We have held that ordinarily it is better to give no instruction concerning defendant's failure to testify unless such an instruction is requested by defendant. If defendant does request such an instruction, as defendant did in this case, it is the duty of the trial judge to instruct the jury on this feature of the case. The judge charged that defendant's failure to testify "should not" be considered against him. Defendant contends that the judge erred because he failed to charge the jury that it "shall not" consider defendant's silence against him. While it is better practice to use the words of the statute, *i.e.*, "shall not create any presumption against him," G.S. 8-54, we do not think the use of the words "should not" is such error as to require a new trial. *See State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976); *State v. Bryant*, 283 N.C. 227, 195 S.E. 2d 509 (1973); *State v. Barbour*, 278 N.C. 449, 180 S.E. 2d 115 (1971).

After a careful examination of the entire record, we find no prejudicial error in the trial, and the decision of the Court of Appeals is affirmed.

[5] An unusual situation exists, however, concerning the sentence imposed upon the defendant. The following appears in the record:

"The Court by statement in open court to counsel for the defendant, with the defendant present, indicated that he would be compelled to give the defendant an active sentence due to the fact that the defendant had pleaded not guilty and the jury had returned a verdict of guilty as charged of a violation of G.S. 14-70. In soliloquy between counsel for the defendant and the Court it was indicated by the presiding judge that the prison sentence would be necessary although the Court was not familiar with the past record or character of the defendant. It was further placed in the record that during the trial of this cause the presiding judge had indicated in chambers to the defendant's counsel his intentions to give to the defendant an active prison sentence if he persisted in his plea of not guilty and did not accept a lesser plea proffered by the Assistant District Attorney."

A sentence within the statutory limit will be presumed regular and valid. However, such a presumption is not conclusive. If the record discloses that the court considered irrelevant and improper matter in determining the severity of the sentence, the presumption of regularity is overcome, and the sentence is in violation of defendant's rights. *State v. Swinney*, 271 N.C. 130, 155 S.E. 2d 545 (1967).

Under Article I, Section 24, of the North Carolina Constitution, no person shall be convicted of any crime but by the unanimous verdict of a jury in open court. The General Assembly, however, may provide other means of trial for misdemeanors with the right of appeal for trial *de novo*. No other right of the individual has been so zealously guarded over the years and so deeply embedded in our system of jurisprudence as an accused's right to a jury trial. This right ought not to be denied or abridged nor should the attempt to exercise this right impose upon the defendant an additional penalty or enlargement of his sentence. The statement of the trial judge, expressed by him in open court, indicated that the sentence imposed was in part induced by defendant's exercise of his constitutional right to plead not guilty and demand a trial by jury. This we cannot condone. We agree with the Court of Appeals: "The trial judge may have sentenced defendant quite fairly in the case at bar, but there is a clear inference that a greater sentence was imposed because defendant did not accept a lesser plea proffered by the State." Defendant

had the right to plead not guilty, and he should not and cannot be punished for exercising that right. *See State v. Rhinehart*, 267 N.C. 470, 148 S.E. 2d 651 (1966); *State v. Patton*, 221 N.C. 117, 19 S.E. 2d 142 (1942). The case must be remanded for entry of a proper judgment, without consideration of defendant's refusal to plead guilty to a lesser offense.

For the reasons stated, the judgment imposed is vacated and the case is remanded to the Court of Appeals for remand to Guilford Superior Court, High Point Division, for proper judgment.

The decision of the Court of Appeals is affirmed.

Affirmed.