STATE OF NORTH CAROLINA v. HAROLD AUBREY BAKER

No. 8323SC245

(Filed 20 December 1983)

### 1. Receiving Stolen Goods § 5.1— receiving stolen pickup truck—sufficiency of evidence

The State's evidence was sufficient to support conviction of defendant for receiving a stolen 1978 blue and beige pickup truck in violation of G.S. 20-106 where it tended to show that defendant was in possession of the blue and beige pickup truck which had been stolen in Tennessee; defendant was also in the possession of a 1978 red pickup truck which he had purchased from a salvage dealer; the original owner of the red pickup had assigned his rights in the red truck to his insurance company after the truck was stolen, wrecked and burned and the company paid him for the loss but had not signed the title to the truck, although the Virginia certificate indicates that title was assigned to defendant by the original owner; the salvage dealer who sold the red truck to defendant failed to sign the title; the red truck's serial number plate was missing and had been attached to the door of the blue and beige truck with rivets which were not the type used by the truck manufacturer; and defendant had obtained a North Carolina title for the red truck which he contended he thought was the title for the blue and beige truck.

### 2. Searches and Seizures § 3— wrecked truck—search in customer parking area —no reasonable expectation of privacy

Defendant had no reasonable expectation of privacy in a wrecked truck which he had placed in plain view in the customer parking area of his business in order to sell its parts, and a Division of Motor Vehicles inspector who was lawfully on the premises could properly testify that when he approached the truck he could see in plain view that the serial number plate was missing from the truck door. Moreover, a photograph of the truck was admissible to illustrate the inspector's testimony.

### 3. Criminal Law §§ 84, 169.3— illegal search—admission of testimony as harmless error

The admission of testimony gained through an illegal search that the frame serial number of the pickup truck in defendant's possession began with "F10" was harmless error where the witness had previously testified that this type of truck would have a serial number beginning with F10.

### 4. Searches and Seizures §§ 3, 13— search of vehicle at service station for serial numbers—lawfulness

A Division of Motor Vehicles inspector's search of defendant's pickup truck to obtain serial numbers from the truck door and body frame while it was at a service station for repairs was lawful since (1) the service station operator had general access to the truck's door and body and properly gave his consent to an inspection thereof; (2) defendant lost his reasonable expectation of privacy in the serial numbers when he placed the truck in the possession of the service station operator; and (3) the inspector was authorized under

State v. Baker

G.S. 20-49(5) to inspect the truck at a repair shop where he had a legitimate reason for checking the identification numbers of the truck.

**5. Criminal Law § 43— photographs of truck after unlawful seizure—admission to illustrate lawful search**

Photographs of a truck taken after its allegedly unlawful seizure were properly admitted to illustrate testimony concerning an earlier lawful search of the truck.

**6. Criminal Law § 71— "stolen" truck—shorthand statement of fact**

A witness's testimony that his truck was "stolen" was admissible as a shorthand statement of facts within the witness's personal knowledge.

**7. Criminal Law § 131.2— newly discovered evidence—denial of new trial**

Defendant's motion for appropriate relief on the basis of "newly discovered evidence" allegedly found in a National Automobile Dealers Association book was denied where the evidence merely tended to contradict or impeach the testimony of a State's witness and was not of such a nature to show that a different result would properly be reached at a new trial, and where the book was not shown to have been unavailable for use during the original trial. G.S. 15A-1415(b)(6).

**8. Automobiles and Other Vehicles § 5— making false affidavit for title—insufficient indictment**

An indictment for knowingly swearing or affirming falsely to an application for title to a motor vehicle was invalid where it failed to allege what information on the application was false. G.S. 20-112; G.S. 20-52; G.S. 15A-924(a)(5) and (e); G.S. 15A-954(a)(10).

APPEAL by plaintiff and defendant from *Fountain, Judge.* Judgment entered 7 October 1982 in Superior Court, WILKES County. Heard in the Court of Appeals 27 October 1983.

*Attorney General Edmisten by Special Deputy Attorney General Issac T. Avery, III, for the State, appellant-appellee.*

*J. Gary Vannoy and Anthony R. Triplett for defendant appellant-appellee.*

BRASWELL, Judge.

Two stolen trucks appeared in the possession of Harold Aubrey Baker. Mr. Baker was indicted on charges of receiving a stolen 1978 Ford F150 truck in violation of G.S. 20-106, altering or changing the vehicle's serial number in violation of G.S. 20-109(b)(1), and making a false affidavit for title prohibited by G.S. 20-112. In response to the defendant's pretrial motion, the

trial court dismissed the charge of making a false affidavit on the ground that it failed to adequately charge a crime. The State has appealed this ruling. The defendant was tried before a jury on the remaining two charges and was found guilty of the single charge of receiving a stolen vehicle. The defendant has appealed the return of this guilty verdict.

The ultimate questions presented for our review concern: (1) the denial of the defendant's motions to dismiss and to set aside the verdict due to the insufficiency of the evidence; (2) the admission of evidence obtained through allegedly illegal searches and seizures; and (3) the dismissal of the charge of making a false affidavit as presented for review by the State. After considering each assignment of error raised by the defendant and the State, we hold the rulings of the trial judge were without error.

The State's evidence tended to show that in May of 1978 the first truck, a blue and beige 1978 Ford F150 Ranger pickup truck, was stolen from Mack Cook, the owner of Nationwide Auto Sales in Johnson City, Tennessee. Mr. Cook testified that the recorded serial number on this truck was "F15HUBC6586." He also testified that he had never sold this truck to the defendant or to anyone else. The second truck, a red 1978 Ford F100 pickup truck, was stolen from Elihu Lloyd, and was taken to Beech Mountain where it was wrecked and burned between late 1978 and early 1979. Mr. Lloyd testified that he never signed the title to the truck which now contains a signature purporting to be his, but instead only signed a document transferring to Travelers Insurance Company the right to sign the title to this truck after the insurance company had paid him for his loss under his theft policy.

The burned red truck was bought from Travelers Insurance by David Kidd who runs a salvage yard and who has a contract with Travelers Insurance Company to purchase salvage in several counties, including the county where the red truck was located. Mr. Kidd sold the red truck to Harold Gilpin, also a salvage dealer, but failed to sign the title he had received from Travelers Insurance when he transferred the truck to Mr. Gilpin.

Johnny Gilpin, the son of Harold Gilpin, testified that in 1979 he went to Kidd Chevrolet and picked up the red truck for his father who said he had the title to it. He saw the defendant at his

father's business, heard the defendant say he wanted to buy the red truck, watched his mother and father haul away the red truck, then later saw this truck parked at Yesterday's Antique Shop which is owned and operated by the defendant. Kathy Gilpin, wife of Harold Gilpin, testified that she and her husband took the red truck to Yesterday's Antique Shop and left it there. Her other son, Harold Dwayne Gilpin, testified that he went to the defendant's antique store and removed the bed off the red truck pursuant to a deal his father had made with the defendant.

As of the time of trial, Harold Gilpin, the father and husband of this family, had left the State and had been gone for eight or nine months. All of the above witnesses for the State, except Mack Cook, indicated that at no time did they ever possess or own the blue and beige pickup truck that was seized by officers from the defendant.

Other evidence from the State revealed that in June of 1982, John Turney, an Inspector with the Division of Motor Vehicles for Wilkes County, received a telephone call from the Mayor of North Wilkesboro and an anonymous telephone call stating that the two trucks in the possession of defendant were stolen. Turney began his investigation on 20 July 1982 by going to Yesterday's Antique Shop which was closed in order to view the red truck that was parked outside. With no chain, barrier or "No Trespassing" signs present to prevent him from walking up to the truck, he noticed through the pickup's open door that the red truck's serial plate was missing. Because the vehicle was parked against the building, he was unable to check the truck's frame serial number.

Mr. Turney testified that a motor vehicle is identified by the Division of Motor Vehicles by its manufacturer's serial number. This number is a combination of letters and numbers assigned by the vehicle's manufacturer and coded in a particular way so that the Division of Motor Vehicles can identify the type of vehicle through its serial number. This manufacturer's serial number is identical to the public serial number which is attached by two rivets on the inside of the truck's door. The manufacturer's number is stamped into the truck's metal frame and is located in different places on different kinds of trucks.

He also testified that he had seen the defendant driving the blue and beige truck many times. After he had discovered that

the red truck's serial number plate was missing, he began looking for an opportunity to check the number on the defendant's blue and beige truck. His chance came on 3 August 1982. He had gone to the Main Street Gulf Service Station to check their inspection records when he saw the blue and beige truck sitting in the station's bay raised up on a lift. After receiving permission from the station operator to inspect the truck, Mr. Turney opened its door and found the public serial number, "F10GNBH2273." He realized that the rivets used to attach the plate to the door were over-sized, covering a portion of the plate's letters and numbers, and that they were not the type used by Ford Motor Company. He walked under the truck which was already raised to the location of the frame number and through the use of a mirror and lights determined its number to be "F15HUBC6586."

On 6 August 1982 through the National Crime Information Center, Mr. Turney identified the "F15" number taken off the blue and beige truck and talked to Mack Cook, the last registered owner of the truck. Through the "F10" number, he was able to find previous owners of the red truck although the "F10" serial plate was now on the door to the blue and beige truck of the defendant. On 19 August 1982, the defendant was arrested and both trucks were seized by the police pursuant to search warrant. The serial number of the red truck obtained through this search was excluded as evidence at trial.

Mr. Turney testified that the defendant had applied for a North Carolina title to a "1978 Ford truck" with a serial number of "F10GNBH2273." The Virginia title to the truck was in the name of Elihu Lloyd and the title had been assigned to the defendant. This application for title had a space to record both the series model and the color of the vehicle, but neither of these spaces were completed.

The defendant, on the other hand, testified that in 1979 he was driving through Virginia looking for antiques to buy for his business when he saw a blue and beige pickup truck parked in front of a vacant building with a "for sale" sign. He talked and dickered with a man who said that if the defendant would buy the blue and beige truck for a particular price he would also give him the red burned truck for parts. This man was "short, heavyset, black headed and had on some type of western hat." The defend-

ant pulled the two trucks back to his place of business and later that evening he and his wife went back after his car that he had left there. The defendant stated that he got a title to one of the trucks from the man and that he assumed the title went with the blue and beige truck since the red truck was unusable. The title given to the defendant was not completely filled out, but had been signed. The signature on the title was "Elihu Lloyd," and the defendant identified the previous State's exhibit which had been determined to be the title to the red truck as the title given to him by the man in Virginia that day.

A few days after this encounter, the defendant applied for a North Carolina title to the truck using the information off the Virginia title he had received. When the title was issued on 19 April 1979, the defendant again assumed that he had received a title to the blue and beige truck. He explained that he parked the red truck beside his business in open view and later, after receiving a telephone call concerning the truck, sold the bed from the truck.

Finally, the defendant testified that he did not change the plate from the red truck to the blue and beige truck and that he had no knowledge that either truck had been stolen. He stated that even though he had been a car dealer he did not know that the "F10" serial number did not go with the "F15" model of truck or that North Carolina had a salvage law, requiring titles for junked vehicles sold as a whole. His wife, daughter, and an employee were all present when he arrived at the antique store with both trucks. The defendant and his wife have since been back to Virginia to try and find the man who sold him the truck and the place where it was sold, but were unable to locate either.

I.

The defendant asserts that the trial court committed reversible error by denying his motion to dismiss and his motion to set aside the verdict because there was insufficient evidence to warrant submitting the case to the jury and to sustain the jury's verdict of guilty. A motion to dismiss for insufficiency of the evidence requires "a consideration of the evidence in the light most favorable to the State, and the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom." *State v. Thomas*, 296 N.C. 236, 244, 250 S.E. 2d

204, 208 (1978). The State standard in weighing the sufficiency of the evidence to support a criminal conviction requires that there be "substantial evidence of each essential element of the offense charged." *State v. Smith*, 300 N.C. 71, 78, 265 S.E. 2d 164, 169 (1980). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 78-79, 265 S.E. 2d at 169. The appropriate standard of review of a claim of insufficient evidence under the federal standard is whether there is sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560, *reh'g denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed. 2d 126 (1979). Although articulated somewhat differently, this standard as interpreted by the North Carolina Supreme Court is the same in substance as the State rule. *State v. Earnhardt*, 307 N.C. 62, 66-67, fn. 1, 296 S.E. 2d 649, 652, fn. 1 (1982); *State v. Jones*, 303 N.C. 500, 504-05, 279 S.E. 2d 835, 838 (1981).

The defendant was convicted of "Receiving or transferring stolen vehicles" under G.S. 20-106. This statute states in part: "Any person who . . . has in his possession any vehicle which he knows or *has reason to believe* has been stolen or unlawfully taken . . . shall be punished as a Class I felon." (Emphasis added.) Because the purpose of this statute "is to discourage the possession of stolen vehicles," *State v. Rook*, 26 N.C. App. 33, 35, 215 S.E. 2d 159, 161, *appeal dismissed*, 288 N.C. 250, 217 S.E. 2d 674 (1975), the State need only prove that the "defendant 'knew or [had] reason to believe' that the vehicle in his possession was stolen. No felonious intent is required." *State v. Murchinson*, 39 N.C. App. 163, 168, 249 S.E. 2d 871, 875 (1978), *overruled on other grounds*, 45 N.C. App. 510, 263 S.E. 2d 298 (1980).

[1] Whether the defendant knew or should have known that the vehicle was stolen "must necessarily be proved through inferences to be drawn from the evidence." *Id.* The evidence giving rise to such inferences so as to lead a rational trier of fact to find guilt beyond a reasonable doubt is as follows: (1) The blue and beige truck with frame serial number "F15HUBC6586" was stolen from Mack Cook. (2) Turney, with the consent of the service station owner who had custody of the blue and beige truck, determined that the serial number from the plate was "F10GNBH-2273." The frame number was "F15HUBC6586." (3) Turney knew

immediately that a "F10" number was not appropriate for this type of truck. (4) The same vehicle description for the red truck and the "F10" number appeared on a Virginia certificate of title under the name of Elihu Lloyd. (5) Lloyd's red truck had been stolen, wrecked, and burned, and he had assigned his rights to the red truck to his insurance company who had paid him for the loss although the actual Virginia certificate indicates that title was assigned to the defendant by Lloyd. (6) David Kidd testified that he bought the red truck from Lloyd's insurance company and sold it to Harold Gilpin but through an oversight failed to sign the title in the sale to Gilpin. (7) Gilpin's family testified that Harold Gilpin who had left the State sold the red truck to the defendant.

This evidence with the fact that the doorplate on the red truck was missing, that the serial number plate on the blue and beige truck was attached by oversized rivets, that the defendant had been in the automobile business, and that the defendant possessed both trucks with switched serial numbers gives rise to an inference that the defendant knew the truck was stolen or at least should have known the truck was stolen.

Ultimately, sufficiency of the evidence necessarily depends on the credibility of the State's witnesses as determined by the jury. Basically, the jury, as revealed through their verdict, believed the Gilpin family rather than the defendant as to how the defendant acquired the red truck. They also believed other State's witnesses, including Elihu Lloyd, who testified that he did not sell either truck to the defendant and did not sign the title which now bears his signature, instead of the defendant who explained that he assumed the title he received was for the blue and beige truck and assumed that the man who sold the trucks to him had legally signed the title as "Elihu Lloyd."

The elements of this offense require the defendant (1) to have possession, and (2) to know or have reason to believe the vehicle was stolen. As shown above, there was substantial evidence of each element to justify a rational trier of fact to find guilt beyond a reasonable doubt. We hold that there was sufficient evidence to submit the case to the jury and to support the verdict rendered.

## II.

Several of the defendant's assignments of error concern the searches and seizures of the two pickup trucks. Inspector Turney

first viewed the burned red truck at the defendant's antique store. The blue and beige pickup was examined at a service station where the truck was being repaired. After this investigation, an arrest warrant was issued against the defendant. Search warrants for both trucks were also issued and the trucks were located and seized. It was from this search and seizure of the red truck that its frame serial number was discovered. The defendant prior to trial, on the basis that the affidavit accompanying the search warrant set forth insufficient facts to establish probable cause, made a motion to suppress the evidence obtained from the searches of both vehicles after the defendant's arrest. The trial court granted the defendant's motion with respect to the red pickup truck.

### A. RED TRUCK

Because of this suppression ruling the defendant asserts that it was error for the trial court to admit into evidence State's Exhibit No. 5, a photograph of the red truck's inside left door revealing two holes where the missing serial number plate should have been located. This photograph was taken after the defendant had been arrested and the red pickup was seized. Inspector Turney testified that on 20 July 1982 he went to the parking lot of the defendant's antique shop and without having to open the red truck's door saw the two holes and that the serial number was missing. Inspector Turney testified to these facts without objection and also stated that he could use the photograph which was a true and accurate representation of the red truck's door to illustrate his testimony. Only when he started towards the jury to point out in the photograph the holes in the door did defense counsel make an objection which was overruled. The trial judge instructed the jury that the photo was admissible only for illustrative purposes and not as substantive evidence.

[2] Inspector Turney testified that his first inspection of the red truck occurred while it was located in an area used for customer parking by the defendant's business. There were no "No Trespassing" signs or barriers to prevent Turney from viewing the truck or to indicate that he should not be on the defendant's commercial premises. The fourth amendment protects against governmental intrusion into areas in which the citizen has a reasonable expectation of privacy. *Katz v. U.S.*, 389 U.S. 347, 88 S.Ct. 507, 19

L.Ed. 2d 576 (1967). Since Turney was lawfully present on the defendant's property, the defendant had no reasonable expectation of privacy in a truck which he had placed in plain view in order to sell its parts and which had been left on property meant for the public's use. *See Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed. 2d 564, *reh'g denied*, 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed. 2d 120 (1971). As Turney indicated through his testimony even the place inside the truck's door where the serial number plate should have been was seen by him in plain view as he approached the truck without having to open the door. "Ordinarily, photographs are competent to be used by a witness to explain or illustrate anything that is competent for him to describe in words." *State v. Swift*, 290 N.C. 383, 395, 226 S.E. 2d 652, 662 (1976). Therefore, since Inspector Turney could lawfully testify to what he saw during his inspection of the red truck while located at the antique store, a photograph illustrating his testimony, upon the laying of a proper foundation, was equally admissible. An examination of the record reveals that a proper foundation was in fact laid. Turney testified that the photograph, although taken after the red truck had been seized, was a fair and accurate representation of the truck and the inside of its left door as it appeared on the day he first inspected the truck. *See* 1 Brandis on North Carolina Evidence § 34 (1982). Because this photograph merely depicts what Turney saw before the red truck had been seized, it did not fall within the trial court's ruling which suppressed all the evidence obtained in a search of the red truck after it had been taken into custody. We hold that the photograph was properly admitted as illustrative evidence.

[3]   The defendant further contends that the trial court erred by allowing Turney to testify to the partial frame number of the red truck. It was precisely this evidence that the defendant's motion to suppress sought to exclude. The following discourse occurred:

Q. What was the frame number from the red pickup truck?

MR. VANNOY: [Defense counsel] Objection.

THE COURT: Overruled.

[Exception No. 12]

A. F one zero

MR. VANNOY: Your Honor, we filed a motion.

THE COURT: I know it. Yes, I know you did.

MR. VANNOY: I'd like to voir dire this man.

Subsequently, a voir dire was held and the trial court prohibited testimony concerning the frame number of the red truck. The defendant contends that allowing the "F one zero" into evidence was prejudicial error in spite of the fact that the remainder of the number never was allowed before the jury.

Our role in reviewing this alleged error is "to consider the trial record as a whole and to ignore errors that are harmless." *United States v. Hasting*, --- U.S. ---, ---, 103 S.Ct. 1974, 1980, 76 L.Ed. 2d 96, 106 (1983). Thus, the criminal defendant must show not only that an error was committed, but that prejudicial error occurred. *State v. Williams*, 275 N.C. 77, 89, 165 S.E. 2d 481, 489 (1969). Inspector Turney had previously testified without objection that Ford Motor Company distinguishes between different series of trucks by letters and numbers. He stated that an F100 truck's serial number would "[b]egin with F1 zero," with the "F" indicating Ford and the "one zero" identifying a series. Then, again without objection, he testified that he recognized the blue and beige truck to be an "F150 Ford Ranger Lariat" and the red burned truck was a "1978 Ford F100" pickup. In light of this evidence, the subsequent admission of only a portion of the red truck's frame serial number was harmless error since he had previously testified that this type of truck would have such a serial number. "It is well recognized in this jurisdiction that the admission of incompetent testimony is cured when substantially the same evidence is theretofore or thereafter admitted without objection." *State v. Covington*, 290 N.C. 313, 339, 226 S.E. 2d 629, 647 (1976).

The trial court excluded the remaining portion of the serial number, "GNBH2273," because it was obtained in a search pursuant to an invalid search warrant. If this evidence had been allowed before the jury, they would have realized that the serial number on the doorplate found on the blue and beige truck did in fact belong to the red truck which would have clearly been very prejudicial to the defendant. Instead, the trial court allowed testimony of the frame number only to the extent it had already

been made known to the jury. The defendant cannot show that a different result would have occurred had this evidence been excluded. *State v. Williams, supra.* We hold that if the partial admission of the red truck's serial number was error, then it was at most harmless error.

## B. BLUE TRUCK

**[4]** The defendant also assigns as error the admission of evidence obtained in the searches of the blue and beige truck before and after its seizure. The search prior to the truck's seizure occurred while it was located at a service station for repairs. From this search, Inspector Turney obtained the doorplate serial number as well as its frame number.

To contest a search and seizure alleged to have been conducted in violation of the Fourth Amendment, the defendant must show that he had a legitimate expectation of privacy in the area searched. *State v. Mettrick,* 54 N.C. App. 1, 11, 283 S.E. 2d 139, 145 (1981), *affirmed,* 305 N.C. 383, 289 S.E. 2d 354 (1982). In determining whether this search by Turney constituted an unreasonable search and seizure, it is important to remember that the defendant had left the blue and beige truck at a garage for servicing. After obtaining the consent of the garage operator, Turney opened the truck door to check the plate serial number and walked under the already lifted truck to obtain the manufacturer's frame number. First of all,

> [v]alid third-party consent to a search may be given by one who "shares with the absent target of the search a common authority over, general access to, or mutual use of the place or object sought to be inspected under circumstances that make it reasonable to believe that the third person has the right to permit the inspection in his own right and that the absent target has assumed the risk that the third person may grant this permission to others."

*United States v. Sellers,* 667 F. 2d 1123, 1126 (4th Cir. 1981), *quoting United States v. Block,* 590 F. 2d 535, 539-40 (4th Cir. 1978). Surely, the garage operator had general access to the truck's door and body so as to be in a position to consent to Turney's inspection. "Moreover, whenever one 'knowingly exposes his activities [or effects] to third parties, he surrenders

Fourth Amendment protections' in favor of such activities or effects." (Brackets in original). *Id., quoting Reporters Com. v. American Telephone & Telegraph*, 593 F. 2d 1030, 1043 (D.C. Cir.), *cert. denied*, 440 U.S. 949, 99 S.Ct. 1431, 59 L.Ed. 2d 639 (1979); *State v. Boone*, 293 N.C. 702, 708, 239 S.E. 2d 459, 463 (1977). Since the defendant voluntarily exposed these serial numbers on the truck when he placed it in the possession of the bailee, he cannot now claim that he had a reasonable expectation of privacy in these serial numbers not in plain view.

Yet, more importantly, Turney, as authorized under G.S. 20-49(5), may "inspect any vehicle . . . in any public garage or repair shop . . . for the purpose of locating stolen vehicles and investigating the title and registration thereof." At this point in his investigation of the defendant, Turney had been notified by two informants that the vehicles in the defendant's possession were stolen and had seen for himself that the serial number plate on the red truck was missing. His investigation of the blue and beige truck was a further attempt by him to identify these vehicles. In *United States v. Powers*, 439 F. 2d 373, 375 (4th Cir.), *cert. denied*, 402 U.S. 1011, 91 S.Ct. 2198, 29 L.Ed. 2d 434 (1971), the Court stated that an

> [i]nspection of a car's identification number differs from a search of a vehicle and seizure of its contents in one important aspect. The occupants of the car cannot harbor an expectation of privacy concerning the identification of the vehicle. The state requires manufacturers to identify vehicles by affixing identification numbers which are also recorded in registries where the police and any interested person may inspect them. Since identification numbers are, at the least, quasi-public information, a search of that part of the car displaying the number is but a minimal invasion of a person's privacy. A police officer, therefore, should be freer to inspect the number without a warrant than he is to search a car for purely private property.

In *State v. Bagnard*, 24 N.C. App. 54, 210 S.E. 2d 93 (1974), *cert. denied*, 286 N.C. 416, 211 S.E. 2d 796 (1975), this Court adopted the rationale of *Powers* and the standard cited to test the reasonableness of the search of the identification numbers. Using the objective standard promulgated by *Terry v. Ohio*, 392 U.S. 1, 21-22,

88 S.Ct. 1868, 1880, 20 L.Ed. 2d 889, 906 (1968), the Court must ask:

> [W]ould the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?

Believing *Powers* to be a sound approach to the issue, the Court in *Bagnard* further provides that " '[t]his standard can be met . . . when the officer has a legitimate ground for checking the identification number.' " *Id.* at 58, 210 S.E. 2d at 96, *quoting Powers, supra,* at 376. In the present case the tips given by the two informants and the missing serial number plate from the red truck gave Turney a legitimate ground for checking the identification numbers on the blue and beige truck. Because the search was valid, we hold that the evidence obtained through this search was properly admitted at trial.

[5] Also, in connection with the blue and beige truck, the defendant contends that the trial court erred by denying his pretrial motion to suppress the evidence obtained when the truck was searched at the service station as well as when it was seized. Having already addressed the issue that the evidence obtained from the search prior to seizure was properly admitted, we must now determine whether the evidence admitted at trial pursuant to the post-seizure search was proper. The defendant concedes in his brief that the only evidence acquired in this search was various photographs taken of the blue and beige truck, including a picture of the serial number plate and the frame number. Since the photographs were admitted to illustrate Turney's lawful search of the truck while at the service station and were not the fruits of any later unlawful seizure, they were admissible. *See State v. Swift, supra.* The photographs, State's Exhibits Nos. 2, 8, 9, 10, and 11, illustrate only evidence and information obtained by Turney in his search of the truck at the service station. We hold that because these photos are representative of a lawful search, the trial court properly denied the defendant's motion to suppress them.

Finally, the defendant contests the testimony of Mack Cook in which he states that his blue and beige truck was "stolen" from his car lot. First of all, the defendant's one objection to the use of the word "stolen" was untimely in that the question and its

answer as well as a second question had been put forth before the objection was uttered. Subsequently, the words "stolen," "taken," and "theft" were used by the prosecution and by the defendant to convey in a shorthand fashion what had happened to the blue and beige truck. The defendant lost the benefit of his objection when substantially the same evidence was thereafter or theretofore admitted without objection. *State v. Covington, supra.*

[6] In any event, we hold that allowing Mack Cook to testify that his truck was stolen when it was clear that this blue and beige truck was missing from his car lot, that he reported this fact to the police, that he was paid for his loss by his insurance company, and that this truck without his or his insurance company's authorization was now in the defendant's possession was not prejudicial error. Referring to the truck as stolen was merely a shorthand statement of these facts within the witness's personal knowledge. The fact that this witness did not know who had removed his truck does not mean that he did not have firsthand knowledge that it was taken without his permission or stolen. North Carolina courts have allowed on numerous occasions similar shorthand expressions. *State v. Billups*, 301 N.C. 607, 272 S.E. 2d 842 (1981). *See State v. Goss*, 293 N.C. 147, 235 S.E. 2d 844 (1977); *State v. Chambers*, 52 N.C. App. 713, 280 S.E. 2d 175 (1981).

### III.

The defendant also made a motion for a mistrial on the grounds that certain testimony which had not been allowed before the jury was broadcast on a radio newscast program where the jury might have heard it. This motion was denied, and while assigning this denial as error, the defendant has failed to address the issue in his brief. We deem that he has abandoned this assignment of error. Rule 28(a), N.C. Rules App. Proc.; *Sutton v. Sutton*, 35 N.C. App. 670, 242 S.E. 2d 644 (1978).

### IV.

#### MOTION FOR APPROPRIATE RELIEF

[7] The defendant filed a motion for appropriate relief in this Court on 3 October 1983. The alleged basis for the motion is newly-discovered evidence purporting to establish that all Ford long-bed, pickup trucks do not necessarily have serial numbers

beginning with F15 and that all Ford short-bed, pickup trucks do not necessarily have serial numbers beginning with F10. The source of this new information is alleged to be through the written publication "National Automobile Dealers Association Book, 1976-1983." The motion is dated 29 September 1983 and says that it was "within the past thirty (30) days" that his new evidence was discovered. The trial occurred in October 1982 with judgment entered 7 October 1982, a delay of approximately eleven months from the giving of the testimony which the defendant would now seek to contradict at any new trial.

The controlling statute on newly-discovered evidence through which relief is asserted is G.S. 15A-1415(b)(6). The requirements for granting relief on this basis of newly-discovered evidence has been fully analyzed and interpreted in *State v. Beaver*, 291 N.C. 137, 229 S.E. 2d 179 (1976).

The authority for making a motion for appropriate relief in the appellate division is found in G.S. 15A-1418(b). Under that section we are first required to "decide whether the motion may be determined on the basis of the materials before it," or whether to remand for an evidentiary hearing in the trial division. Upon a review of the materials, we conclude that the motion can be determined in conjunction with the direct appeal. We hold that the motion reveals an insufficient basis to award a new trial, that the purported evidence is not newly-discovered evidence within the meaning of *Beaver* or of the statute, and the motion is denied.

Although the motion is verified by the defendant on information and belief, there is no affidavit in support of it by any person who would allegedly testify to the allegations in the motion. The State, in its response of 18 October 1983, filed an affidavit of Lloyd Letterman, Administrative Assistant to the Director of the North Carolina Department of Transportation, Division of Motor Vehicles, License and Theft Section. Mr. Letterman's affidavit shows that he has been so employed since July 1970, and that he is familiar with the procedure for assigning serial numbers to 1978 Ford pickup trucks, that the manufacturer determines the coded sequence of letters and numbers, and that a person properly trained can tell from the serial number the vehicle model series that bears the serial number. Mr. Letterman states that "[a] 1978 Ford 'F150' pickup truck can have a short bed or a long bed and likewise for the 'F100,'" and he clarifies by adding:

VI. Even though a short bed pickup can be an "F150" and a long bed truck can be an "F100", the series model ("F150" or "F100") can always be determined by reference to the serial number. An "F150" model truck will always have the serial number beginning "F15" and "F100" series model will always have a serial number beginning with "F10."

Referring back to the original trial testimony, State's witness John W. Turney testified that he had been a License and Theft Inspector with the Division of Motor Vehicles for 17 years. During the course of his testimony on this subject there were no objections, exceptions, or motions to strike as to any question or answer. The topic of serial numbers was introduced through this question:

Q. How is a motor vehicle, particularly a pickup truck, identified by the Division of Motor Vehicles?

A. By the Manufacturer's serial number [which he also referred to as being the same as "VIN, vehicle identification numbers"].

. . . .

Q. Can you tell by looking at the manufacturer's serial number what type vehicle this ought to belong on?

A. Yes, sir.

Q. How do you do that?

A. Well, on Ford Motor Company code their pickup trucks, if it is an F150 which is a short bed they begin with F, which indicates Ford and one zero which indicates a series.

Q. You said F150 is a short bed?

A. No, F150 is a long bed.

Q. What is the short bed for the Ford truck?

A. F100

When asked what the series numbers mean Mr. Turney replied: "A. It is the type engine, transmission and the plant where was manufactured," and that these numbers were "[e]ssentially production number assigned to the vehicle and a numerical sequence."

Under all the uncontradicted evidence before us we hold that there was no dispute at trial, nor now by motion, that the 1978 Ford pickup, blue in color, had a manufacturer's serial number in the F150 series and that the red, burned Ford had an F100 series original number. In accordance with Mr. Letterman's affidavit we accept as true the statement that a 1978 Ford F150 pickup can have a short bed or a long bed and likewise for the F100 series. This evidence, we hold is not of such a nature to show that a different result would probably be reached at a new trial. *State v. Beaver, supra.* At most, this new evidence merely tends to contradict and to impeach or discredit the testimony of Mr. Turney. The defendant's motion fails to show that due diligence was used and the proper means employed to procure the testimony of as yet unnamed persons to qualify to speak with authority on the identical subject which was revealed to the defendant in the course of the trial. There was no request for a recess or continuance to obtain impeaching material. The motion states the new information came from a "National Automobile Dealers Association Book, 1976-1983." It would seem that such a publication would be known to defendant when the evidence shows him to have been a former motor vehicle dealer. At any rate the book, or some similar book, is not shown to have been unavailable for use during the original trial. To contend approximately eleven months later that the book would have been used for cross examination if counsel had known about it is, in our view, without merit. As interpreted by the State in its response, "[t]he mere fact the transcript indicates a reference to a short and long bed does not make the testimony incorrect." Even though some confusion may exist as to whether body style or gross weight or length determines which number the model series carries, it is beyond question in this record that the F150 vehicle was a blue 1978 Ford pickup truck and that the red, burned 1978 Ford pickup truck bore an F100 serial number. The number on the blue 1978 Ford also corresponded with the number of the stolen vehicle denominated in the bill of information upon which the defendant was tried and convicted.

## V.

### THE STATE'S APPEAL

[8] The State separately appealed pursuant to G.S. 15A-1445 (a)(1), the trial court's dismissal of the charge of knowingly swear-

ing or affirming falsely to the application of title for the blue and beige truck. The dismissal was granted on the grounds that the indictment failed to charge a crime. The indictment alleges:

> that on or about the 3rd day of April, 1979, in Wilkes County Harold Aubrey Baker unlawfully and wilfully did feloniously knowingly swear or affirm falsely to the application for title for a 1978 Ford truck vehicle identification number F10-GNBH2273 required by the terms of Article 3 of Chapter 20 to be sworn or affirmed to in violation of the following law: 20-112.

Although the State and the defendant contend in their briefs that the indictment is valid only if Article 3 of Chapter 20 requires an application for title to a motor vehicle to be sworn or affirmed, we feel the indictment is invalid because it fails to allege what information on the application was false. G.S. 20-112 states that any person who knowingly swears or affirms falsely to an affidavit shall be guilty of perjury. The crime of perjury requires, among other things, that a false statement under oath be knowingly made. *State v. Chaney*, 256 N.C. 255, 123 S.E. 2d 498 (1962). G.S. 20-52 states that "every such application shall bear the signature of the owner . . . and said signature shall be acknowledged by the owner before a person authorized to administer oaths." While the indictment alleges that the application was sworn to, it fails to indicate the actual false statement made on the application.

Furthermore, G.S. 15A-924(a)(5) requires that a criminal pleading must contain "[a] plain and concise factual statement . . . which . . . asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant . . . of the conduct which is the subject of the accusation." The trial court must dismiss the charge if the pleading fails in this respect. G.S. 15A-924(e). The defect must appear on the face of the record. *State v. Underwood*, 283 N.C. 154, 195 S.E. 2d 489 (1973); *State v. Bass*, 280 N.C. 435, 186 S.E. 2d 384 (1972). It is plain on the face of this indictment that no factual statement was given which would put the defendant on notice as to what information placed on the application was allegedly false.

We hold that the indictment did fail to charge a crime in its failure to relate what substantive material on the application for title was false, and that the charge was properly dismissed. G.S. 15A-954(a)(10). If it feels so advised, the State is free to seek a new and proper bill of indictment. *See State v. Callett*, 211 N.C. 563, 191 S.E. 27 (1937).

The results are: As to the defendant's appeal, no error; as to the State's appeal, affirmed.

Judges ARNOLD and WHICHARD concur.