STATE OF NORTH CAROLINA v. FLINT FITZGERALD JOHNSON

No. 502A86

(Filed 7 October 1987)

**1. Criminal Law § 69— opinion that telephone call was local—harmless error**

Assuming that the trial court erred in the admission of a witness's opinion that a telephone call received from defendant on the date of the crimes when defendant's alibi witness claimed he was in the District of Columbia was a local call made in Durham, such error was harmless in light of the testimony of other witnesses placing defendant in Durham on the date of the crimes.

**2. Rape and Allied Offenses § 5— first degree rape—serious injury to prevent escape**

The trial court did not err in submitting first degree rape to the jury on the theory that defendant inflicted serious injury upon the victim where two rapes and the assault that inflicted serious injury occurred within a one-half hour period, and defendant inflicted the injury (stab wounds and cuts) in an attempt to prevent the victim's escape from his unlawful custody since the injury was one in a series of incidents forming one continuous transaction between the rapes and the infliction of injury.

**3. Kidnapping § 1.3— first degree kidnapping—instruction on serious injury**

The trial court did not err in instructing the jury that multiple stabbing and cutting with scissors, leaving a tip of the scissors embedded in the victim's head, would constitute a serious injury for purposes of first degree kidnapping.

**4. Criminal Law § 138.7— sentencing—refusal to enter plea not considered**

The trial court's statement that it had, *inter alia*, considered the arguments of counsel in imposing sentence, when considered with the fact that the defense and prosecuting attorneys both made reference in their jury arguments to defendant's refusal to enter a plea, did not show that the trial court improperly considered defendant's decision to plead not guilty and go to trial in determining that his sentences for two rapes and kidnapping would be consecutive and in deciding the severity of the sentence for kidnapping.

**5. Criminal Law § 26.5; Kidnapping § 2— first degree kidnapping—rape—punishment for both—double jeopardy**

Double jeopardy principles preclude defendant's conviction for both first degree kidnapping and two first degree rapes where, pursuant to the court's instructions, the jury may have used one of the rapes to elevate the kidnapping from second to first degree. Upon remand for resentencing, the trial court may arrest judgment on the first degree kidnapping conviction and resentence defendant for second degree kidnapping or it may arrest judgment on one of the rape convictions.

APPEAL of right pursuant to N.C.G.S. § 7A-27(a) (1986) from judgments imposing consecutive life sentences for two convictions

of first degree rape, entered by *Lake, J.,* at the 30 May 1986 Criminal Session of Superior Court, DURHAM County. On 22 December 1986 we allowed defendant's petition to bypass the Court of Appeals in appeals from convictions of kidnapping, for which the trial court sentenced defendant to thirty years imprisonment, and two assaults, for which the trial court sentenced defendant to eight years imprisonment. Heard in the Supreme Court 9 September 1987.

*Lacy H. Thornburg, Attorney General, by David Roy Blackwell, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Daniel R. Pollitt, Assistant Appellate Defender, for defendant-appellant.*

WHICHARD, Justice.

Defendant was convicted of two counts of first degree rape, first degree kidnapping, assault with a deadly weapon with intent to kill inflicting serious bodily injury, and assault with a deadly weapon. He was sentenced to two consecutive life terms for the rapes, thirty years (consecutive) for the kidnapping, and eight years (consecutive) for the assaults. We find no error in the guilt phase but remand for resentencing.

The State's evidence, in pertinent summary, showed the following:

At approximately 1:00 a.m. on 2 November 1985 defendant approached the victim in a parking lot on the campus of North Carolina Central University in Durham. The victim returned to her car while talking with defendant. Defendant entered the car and procured a broken bottle, held the bottle to the victim's neck, and ordered her to drive down a dirt road and stop. Defendant then instructed her to get into the back seat.

The victim obtained a pair of scissors from the window visor, but defendant took them from her. He then forced her to remove her clothes and had involuntary sexual intercourse with her. Five minutes later he again had involuntary intercourse with her. He then forced her to return to the front seat and begin driving.

The victim, still unclothed, noticed a house with lights on. She slowed the car, jumped out, and ran toward the house. De-

fendant pulled her down from behind and began stabbing her with the scissors. An occupant of the house heard the screams, rushed from his house, and observed a black male fleeing from the scene. He helped the victim into his home, and his wife contacted law enforcement authorities.

The victim suffered numerous stab wounds and a collapsed lung.

Defendant presented several alibi witnesses who testified that he was in the District of Columbia when the alleged incidents occurred. He also presented evidence tending to refute the victim's description of him.

GUILT PHASE

[1] Defendant contends the court erred in admitting evidence which tended to show that he made a local phone call in Durham on 2 November 1985, when his alibi witnesses claimed that he was in the District of Columbia. The following exchange occurred on direct examination of a State's witness:

Q. Okay. Now, on that Saturday afternoon were you able to tell by the phone connection whether it sounded like a local call or a long distance call?

[Defense Counsel]: Objection, Your Honor. That would be so speculative it would be unreal.

COURT: Overruled, if she knows.

Q. . . . Well, were you able to form any opinion?

A. In my opinion, they were local phone calls.

Q. Now, why do you say that?

A. Because with a long distance phone call you have—there's like an air sound or an echo in the phone—in the phone, and I did not hear that.

Assuming, without deciding, that the admission of this evidence was error, we hold the error harmless. The purpose of the evidence was to discredit defendant's alibi defense. The State presented considerable other evidence to the same effect. The victim positively identified defendant as her assailant. One State's witness testified that she drove defendant to the Durham bus sta-

tion on the night of 2 November 1985. Another witness testified that on 1 November 1985 defendant asked friends of the witness to drive him to the scene of the abduction. Still another testified that defendant came to his home on a Saturday morning in November and claimed to have raped a white woman; 2 November 1985 was a Saturday.

In light of the foregoing, the witness' opinion as to the local origin of her phone call from defendant was cumulative and insignificant. Defendant has failed to establish that "there is a reasonable possibility that, had the [alleged] error in question not been committed, a different result would have been reached at the trial . . . ." N.C.G.S. § 15A-1443(a) (1983). This assignment of error is thus overruled.

Defendant concedes that he did not object to the jury instructions at trial. He nevertheless contends that we should find "plain error" in two aspects of the instructions:

[2] First, he argues that the court erred in instructing that the jury could convict him of the rapes if it found, *inter alia*, that he employed or displayed a dangerous or deadly weapon or weapons (*i.e.*, a broken bottle and a pair of scissors), *or* that he inflicted serious injury upon the victim (*i.e.*, numerous stab wounds or cuts). The basis of his argument is the following:

There was insufficient evidence that he inflicted serious personal injury upon the victim "before, during, or soon after either rape." The only evidence of serious injury was that regarding the stab wounds inflicted by the use of scissors. Since these wounds were inflicted some time after both rapes, they cannot "relate back" to the rapes so as to constitute an element of the offenses. This is especially so, defendant argues, as to the first of the two alleged rape offenses. Since the jury returned a general verdict of guilty, it is impossible to determine whether the verdict is based upon a finding that defendant employed or displayed a dangerous or deadly weapon, which is supported by the evidence, or upon a finding that he inflicted serious injury upon the victim, which is not. "[A] conviction cannot stand merely because it could have been supported by one theory submitted to the jury if another, invalid theory was also submitted and the jury's general verdict of guilty does not specify the theory upon which the jury based its

verdict." *State v. Belton,* 318 N.C. 141, 164, 347 S.E. 2d 755, 769 (1986).

"A prerequisite to our engaging in a 'plain error' analysis is the determination that the instruction complained of constitutes 'error' at all." *State v. Torain,* 316 N.C. 111, 116, 340 S.E. 2d 465, 468 (1986). We conclude that the challenged instruction was not error, and therefore a "plain error" analysis is not required. *Id.*

We stated in *State v. Blackstock,* 314 N.C. 232, 242, 333 S.E. 2d 245, 252 (1985):

> [O]ur legislature intended and we therefore hold that the element of infliction of serious personal injury upon the victim . . . in the crimes of first degree sexual offense and first degree rape is sufficiently connected in time to the sexual acts when there is a series of incidents forming one continuous transaction between the rape or sexual offense and the infliction of the serious personal injury. Such incidents include injury inflicted on the victim to overcome resistance or to obtain submission, . . . in an attempt to commit the crimes or in furtherance of the crimes . . . or . . . for the purpose of concealing the crimes or to aid in the assailant's escape.

Here both rapes and the assault that inflicted serious injury occurred within a one-half hour period. Defendant inflicted the injury in an attempt to prevent the victim's escape from his unlawful custody. He probably inflicted the injury to obtain the victim's submission for the purpose of further sexual assaults, in an attempt to conceal the crimes, and in an attempt to aid in his escape. In any event, he clearly inflicted the injury "in furtherance of the crimes." *Id.* We thus hold that the injury was one in a series of incidents in the same criminal episode, forming one continuous transaction between the rapes and its infliction. *Id.* *See also State v. Locklear,* 320 N.C. 754, 360 S.E. 2d 682 (1987). The instructions in question thus were not error.

[3] Second, defendant argues that the court erred in instructing on the kidnapping charge that "[t]he multiple stabbing and cutting of a person with scissors, leaving a tip of said scissors embedded in the person's head, would be a serious injury." He contends that the instruction constituted "an unconstitutional preemptory [sic] instruction or directed verdict on the 'serious injury' element of the four offenses where 'serious injury' was an element."

We recently addressed a similar contention in *State v. Torain*, 316 N.C. 111, 340 S.E. 2d 465. There, the trial court instructed that a utility knife constituted a dangerous or deadly weapon for purposes of first-degree rape. We upheld the instruction, explaining:

> In this case, therefore, the *nature* of the weapon used or displayed by defendant in the commission of his sexual assault upon the victim was not an "element" — question of fact — of the offense for which he was tried and convicted. The fourth element of first-degree rape is that the defendant "employ[ed] or display[ed] a dangerous or deadly weapon." N.C.G.S. § 14-27.2(a)(2)(a) (1981); N.C.P.I.-Crim. 207.10, at 2 (1983). The question of *fact* within this element is whether defendant *employed or displayed* the weapon found to be dangerous or deadly, here, as a matter of law. The trial judge properly instructed the jury that its duty would be to return a verdict of guilty of first-degree rape if the jury found, *inter alia*, that the State had proved, beyond a reasonable doubt, that "N. L. Torain used or displayed the utility knife."

*State v. Torain*, 316 N.C. at 122, 340 S.E. 2d at 471-72. *See also State v. Davis*, 33 N.C. App. 262, 234 S.E. 2d 762 (1977) (court may instruct that if jury believes uncontradicted evidence showing injuries that could not conceivably be regarded as anything but serious, it may find that there was serious injury).

Here, similarly, the multiple stabbing and cutting with scissors, leaving a tip of the scissors embedded in the victim's head, could not conceivably be considered anything but serious injury. The question of fact for the jury was whether defendant caused the injury which we here hold to be serious as a matter of law. The court thus properly instructed that the jury could find defendant guilty of first degree kidnapping if, *inter alia*, the State proved beyond a reasonable doubt that defendant inflicted multiple stabbing and cutting wounds with scissors. Because the challenged instruction was not error, we again are not required to engage in plain error analysis. *State v. Torain*, 316 N.C. at 116, 340 S.E. 2d at 468.

SENTENCING PHASE

[4] Defendant contends he is entitled to a new sentencing hearing because the court considered "irrelevant and improper mat-

ters" — *viz*, his decision to plead not guilty and go to trial — in determining that his sentences would be consecutive and in deciding the severity of his sentence for kidnapping. The factual basis for the argument is as follows:

Immediately prior to the sentencing hearing, defense counsel at trial (not present counsel) stated in open court:

Your Honor, this might be the appropriate time, and I want on the record that during and from Tuesday that I have talked with [defendant] about — to allow me, which up until this time he has not allowed me to talk to the State about a potential plea, and I want to put it on the record that [defendant] has forbidden me to discuss or try to work out any potential plea in this case, even as late as of yesterday, and I just wanted him to agree to that on the record, that I did attempt for the last couple of days to [get] him to allow me to talk to the State about a potential plea, but he has indicated he had no notions of pleading to any kind of plea in this case.

The prosecuting attorney thereafter stated the following as part of his sentencing argument:

The position of the state is that . . . if a person comes up here and confesses his sins . . . that person is entitled to some consideration, some mercy. When he comes up here and says I have done wrong, I made a mistake and asks the Court for some consideration or mercy, I think there is some authority for that, that that is a part of justice, but in this case, this defendant has said that he didn't want that. He didn't want the Court's consideration. He wanted justice, he wanted the state to prove it, and no[t] only did the state have to go to all the expense that it did and then try it to two different juries. The position of the state is that he was saying, prove it, that he was saying — that he stiffened his neck, and the position of the state is that in a case like that he is not entitlted [sic] to the same consideration as a person who comes up here and says I have done wrong.

I would ask the Court to enter sentence — Our position is basically that this man should never, never, never be released from the Prison system . . . .

The trial court then stated, *inter alia,* in pronouncing sentence, that it had "considered the evidence, *the arguments of counsel,* and the statement of the defendant." (Emphasis added.) Defendant argues that since the defense and prosecuting attorneys both made reference to his refusal to enter a plea, and the court stated that it had considered the arguments of counsel, the improper arguments "must have affected the . . . sentencing determinations."

While a sentence within the statutory limit will be presumed regular and valid, such a presumption is not conclusive. *State v. Boone,* 293 N.C. 702, 712, 239 S.E. 2d 459, 465 (1977). "If the record discloses that the court considered irrelevant and improper matter in determining the severity of the sentence, the presumption of regularity is overcome, and the sentence is in violation of defendant's rights." *Id.* "Defendant had the right to plead not guilty, and he should not and cannot be punished for exercising that right." *Id.* at 712-13, 239 S.E. 2d at 465.

In *Boone* the trial court expressly stated that it would be compelled to give defendant an active sentence due to the fact that he had pleaded not guilty and the jury had returned a verdict of guilty as charged. *Id.* at 712, 239 S.E. 2d at 465. Here, by contrast, the record reveals no such express indication of improper motivation. The trial court merely prefaced its pronouncement of defendant's sentences with the statement, routinely made at sentencing, that it had, *inter alia,* considered the arguments of counsel. Nothing in this customary statement suggests that improper considerations in those arguments influenced the sentencing decision. Trial courts retain discretion to impose consecutive sentences for multiple offenses, N.C.G.S. § 15A-1354 (1985), and it is "not . . . an unusual punishment in North Carolina" when they exercise this option in cases involving first degree rape combined with other offenses. *State v. Ysaquire,* 309 N.C. 780, 784-87, 309 S.E. 2d 436, 441 (1983). Defendant's argument has no basis in the record; this assignment of error is thus overruled.

[5] Defendant contends that double jeopardy principles preclude his conviction for both first degree kidnapping and the first degree rapes. We agree. A kidnapping is in the first degree "[i]f the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted."

N.C.G.S. § 14-39(b) (1986). The trial court instructed generally on this element in the language of the statute, and the jury returned a general verdict of guilty of first degree kidnapping. An ambiguous verdict must be construed in favor of the defendant. *State v. Belton*, 318 N.C. at 165, 347 S.E. 2d at 769. Since the jury may have used one of the rapes to elevate the kidnapping from second to first degree, the case must be remanded for resentencing. *State v. Freeland*, 316 N.C. 13, 20-24, 340 S.E. 2d 35, 39-41 (1986). *See also State v. Young*, 319 N.C. 661, 662-64, 356 S.E. 2d 347, 348-49 (1987); *State v. Belton*, 318 N.C. at 160-65, 347 S.E. 2d at 766-69; *State v. Whittington*, 318 N.C. 114, 123-24, 347 S.E. 2d 403, 408-09 (1986); *State v. Mason*, 317 N.C. 283, 292-93, 345 S.E. 2d 195, 200 (1986). The trial court may arrest judgment on the first degree kidnapping conviction and resentence defendant for second degree kidnapping or it may arrest judgment on one of the rape convictions. *State v. Freeland*, 316 N.C. at 24, 340 S.E. 2d at 41.

Defendant finally contends that double jeopardy principles bar the use of a single "serious injury" to support his convictions for first degree kidnapping, first degree rape, and assault with a deadly weapon with intent to kill inflicting serious injury. The record contains neither an exception nor an assignment of error supporting this argument, however. The argument thus is not before us for review. N.C.R. App. P. 10(a).

No error in the guilt phase; remanded for resentencing.