STATE OF NORTH CAROLINA
v.
ANTHONY JOHN CRISTOBAL
No. COA08-1511
Court of Appeals of North Carolina
Filed: August 4, 2009
This case not for publication
Attorney General Roy Cooper, by Senior Deputy Attorney General Thomas J. Ziko, for the State.
Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Anne M. Gomez, for defendant.
BRYANT, Judge.
Anthony John Cristobal (defendant) appeals from a judgment dated 19 May 2008 and entered pursuant to a jury verdict finding him guilty of involuntary manslaughter. The trial court found defendant had a prior record level of III and sentenced defendant to a term of twenty-one to twenty-six months imprisonment, the top of the presumptive range for defendant's prior record level and felony class. Defendant filed notice of appeal on 29 May 2008. We find no error.

Facts
The State presented evidence tending to show the following: During the early morning hours of Saturday, 3 February 2007, defendant went to a party at the apartment of Brent Bourgeois in Clemmons, North Carolina. Defendant was intoxicated, and Mr. Bourgeois asked defendant to leave the party. Mr. Bourgeois and his roommate escorted defendant and another man from their apartment out to the parking lot. In the parking lot, defendant got into an altercation with Mr. Bourgeois and caused Mr. Bourgeois to fall to the ground and hit his head on the pavement, knocking Mr. Bourgeois unconscious. Mr. Bourgeois' roommate called the police and defendant ran off. Other attendees of the party carried Mr. Bourgeois back inside his apartment, where he regained consciousness a few minutes later. Mr. Bourgeois had a bloody nose and was bleeding from the back of his head. Deputies of the Forsyth County Sheriff's Department arrived and offered to provide medical attention to Mr. Bourgeois, but he declined.
Over the next two days, Mr. Bourgeois' condition worsened, but he did not seek medical attention. On the morning of 6 February 2007, Mr. Bourgeois' mother came to his apartment to take him to a doctor's appointment. Mr. Bourgeois did not answer the door, and he was subsequently found dead, lying between the sofa and coffee table. Dr. Patrick Lantz of the Wake Forest University Baptist Medical Center performed an autopsy and confirmed that Mr. Bourgeois died from acute intra-cranial injury associated with bleeding due to blunt trauma caused by his head striking a fixed object.
On appeal, defendant's sole argument is that the trial court based its sentencing determination on improper factors. Defendant contends the trial court improperly sentenced defendant based upon its belief that defendant's probation should not have been terminated and its displeasure with the sentencing options available for a conviction of involuntary manslaughter. We disagree.

Standard of Review
"When a sentence is within the statutory limit it will be presumed regular and valid unless `the record discloses that the court considered irrelevant and improper matter in determining the severity of the sentence.'" State v. Davis, 167 N.C. App. 770, 775, 607 S.E.2d 5, 9 (2005) (quoting State v. Johnson, 320 N.C. 746, 753, 360 S.E.2d 676, 681 (1987)); see also State v. Gantt, 161 N.C. App. 265, 271, 588 S.E.2d 893, 897 (2003) ("Although a sentence within the statutory limit will be presumed regular and valid, such a presumption is not conclusive."), disc. review denied, 358 N.C. 157, 593 S.E.2d 83 (2004). "If the record discloses that the [trial] court considered irrelevant and improper matter in determining the severity of the sentence, the presumption of regularity is overcome, and the sentence is in violation of [the] defendant's rights." State v. Boone, 293 N.C. 702, 712, 239 S.E.2d 459, 465 (1977); see also State v. Swinney, 271 N.C. 130, 155 S.E.2d 545 (1967) (vacating and remanding for entry of proper judgment where the trial court imposed the sentence, not for involuntary manslaughter to which the defendant had entered a plea, but for having participated in the dinner and dance party at which liquor was served.); State v. Snowden, 26 N.C. App. 45, 215 S.E.2d 157 (vacating and remanding for a new sentencing hearing where the record affirmatively showed the sentences were imposed based upon improper reasons which included a mistaken assumption that the offenders would be released after service of only one-fourth of their sentences), cert. denied, 288 N.C. 251, 217 S.E.2d 675 (1975). Where "the record reveals no such express indication of improper motivation," the defendant is not entitled to a new sentencing hearing. Johnson, 320 N.C. at 753, 360 S.E.2d at 681.
At defendant's sentencing, the State requested the trial court sentence defendant to a minimum of twenty-one months imprisonment, the top of the presumptive range for defendant's prior record level and felony class. The trial court then made four statements which defendant now argues show the court considered improper factors during sentencing. The first three statements occurred during an exchange between the trial court and Mr. James Quander, defendant's trial counsel:
THE COURT: That's why I said I'm curious that [defendant] was  had an active sentence that he got out of. How long had he been out?
. . .
MR. QUANDER: That's [sic] sentence has since  (speaks inaudibly with the defendant)  so it had been two years, Your Honor.
THE COURT: Okay.
MR. QUANDER: That sentence has since expired.
THE COURT: I know.
MR. QUANDER: And so it had been two years that he was out. He certainly got a break.
THE COURT: Well, they should have extended his probation so that (sic) could have activated it.

MR. QUANDER: Right.
THE COURT: But that's not my job.
MR. QUANDER: And, you know, in speaking 
THE COURT: I don't control the probation and parole very much.
MR. QUANDER: But, you know, one reason, Your Honor, I think he was a model probationer to the probation officer. They knew about the charge, but as far as what he did and the other things other than this event, he completed fine on probation. That may be one reason why they did terminate the probation. I don't know. I expected 
THE COURT: Mr. Quander, I've long since given up trying to figure out what they do. Sometimes it's rational; sometimes it's not. It's probably mostly driven by manpower shortages and lack of funding to do their job.

MR. QUANDER: Maybe. Maybe. But I tell the Court that because at the end of the day, I think, you know, the charge is what it is because there was no intent to kill Brent and 
THE COURT: Well, he's lucky. You saw what happened to somebody that had just a little bit more intent.
MR. QUANDER: Right. And
THE COURT: Seventeen and a half years.
MR. QUANDER: That's right. That's right. That's right. But I think it is worth mentioning that, you know, that 
THE COURT: He's lucky he wasn't charged with voluntary.

(Emphasis added.) The last statement occurred when the trial court addressed the mother of the victim immediately after the defendant spoke on his own behalf at sentencing:
THE COURT: Okay. In this case, I could say a lot. Ms. Songer, I'm sorry for your loss. Nothing I can do can do anything to change that. I could talk a long time about alcohol and drugs. I see it constantly. But, in any event,  and I could talk about the inadequacy of the involuntary manslaughter. I think it probably is too little for a human life  a young man's life. But, in this case, I'll do what I can with what I have.
Twenty-one months minimum, twenty-six months maximum to the custody of the State Department of Corrections. He's in your custody.
Mr. Quander, the one message I want your client to get is that for the rest of his life, it just gets worse if he comes back. Maybe he'll figure it out; maybe he won't. I don't know. What I have to do is try to keep him from hurting other people outside of the prison system. I can certainly do what I can do to do that. Warn him about the habitual felon law. He's getting close.
(Emphasis added.)
While the trial court may have been dismayed by defendant's release from probation and perceived inadequacy of the punishment for involuntary manslaughter, we hold these statements are not express statements of improper motive and do not affirmatively disclose that the trial court imposed a sentence based on irrelevant or impermissible factors. Rather, the trial court expressed its motive in sentencing defendant when it stated, "What I have to do is try to keep [defendant] from hurting other people outside of the prison system." The trial court's imposition of the maximum possible sentence in the presumptive range, as requested by the State, is within its discretion, and defendant has not met his burden of showing the sentence is based on irrelevant or impermissible factors.
NO ERROR.
Chief Judge MARTIN and Judge ELMORE concur.
Report per Rule 30(e).