IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-689

Filed 20 February 2024

Henderson County, Nos. 18 CRS 54778, 19 CRS 367

STATE OF NORTH CAROLINA

v.

MARK ALAN MILLER, Defendant.

Appeal by Defendant from judgment entered 19 November 2021 by Judge Peter B. Knight in Henderson County Superior Court. Heard in the Court of Appeals 11 April 2023.

*Attorney General Joshua H. Stein, by Assistant Attorney General Jodi Privette Carpenter, for the State.*

*Carolina Law Group, by Kirby H. Smith, III, for Defendant-Appellant.*

CARPENTER, Judge.

Mark Alan Miller ("Defendant") appeals from judgment entered after a Henderson County jury convicted him of trafficking in methamphetamine by possession, in violation of subsection 90-95(h)(3b), and trafficking in opium by possession, in violation of subsection 90-95(h)(4). *See* N.C. Gen. Stat. § 90-95(h)(3b), (4). On appeal, Defendant argues the trial court erred by: (1) denying his motion to dismiss the subsection 90-95(h)(4) charge; (2) instructing the jury that opioids were included in the definition of "opium or opiate" at the time of the offense; and (3) considering evidence of improper factors at sentencing. After careful review, we

disagree and discern no error.

## I.      Factual & Procedural Background

On 16 September 2019, a Henderson County grand jury indicted Defendant for, among other crimes, "trafficking opium/heroin" under subsection 90-95(h)(4).  On 8 November 2021, the State tried Defendant in Henderson County Superior Court.

Trial evidence relevant to this appeal tended to show the following.  On 7 November 2018, the Henderson County Sherriff's Drug Enforcement Unit executed a valid search warrant at Defendant's home, where they found a pill bottle containing thirteen white pills.  Miguel Cruz-Quinones, a forensic scientist with the North Carolina State Crime Lab, tested the pills and found that they contained hydrocodone.

At the close of the State's case, Defendant moved to dismiss all the charges, which the trial court denied.  Defendant elected not to put on any evidence, but he renewed his motion to dismiss the charges, which the trial court again denied.  During its jury instructions, the trial court explained, over Defendant's objection, that opioids were included in the definition of "opium or opiate" under subsection 90-95(h)(4).

On 19 November 2021, the jury found Defendant guilty of "trafficking in methamphetamine by possession," in violation of subsection 90-95(h)(3b), and "trafficking in opium by possession," in violation of subsection 90-95(h)(4).  The trial court then conducted a sentencing hearing, where the State mentioned Defendant's

rejection of a plea deal and additional drug activity at Defendant's home. The trial court sentenced Defendant to two consecutive sentences of imprisonment, both for between seventy and ninety-three months. Also on 19 November 2021, Defendant gave timely notice of appeal.

## II.    Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. § 7A-27(b)(1) (2021).

## III.    Issues

The issues on appeal are whether the trial court erred by: (1) denying Defendant's motion to dismiss his subsection 90-95(h)(4) charge; (2) instructing the jury that opioids were included in the definition of "opium or opiate" at the time of the offense; and (3) considering evidence of improper factors at sentencing.

## IV.    Analysis

### A. Motion to Dismiss

First, Defendant argues the trial court erred in denying his motion to dismiss the subsection 90-95(h)(4) charge because hydrocodone is an opioid and was not prohibited by subsection 90-95(h)(4) at the time of the offense. We disagree.

We review a denial of a motion to dismiss de novo. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). Under a de novo review, this Court "'considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008)

(quoting *In re Greens of Pine Glen, Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

"Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980).

In reviewing Defendant's motion to dismiss, we must interpret subsection 90-95(h)(4). *See* N.C. Gen. Stat. § 90-95(h)(4). And when interpreting statutes, we must "take the statute as we find it." *Anderson v. Wilson*, 289 U.S. 20, 27, 53 S. Ct. 417, 420, 77 L. Ed. 1004, 1010 (1933). This is because "a law is the best expositor of itself." *Pennington v. Coxe*, 6 U.S. (2 Cranch) 33, 52, 2 L. Ed. 199, 205 (1804).

But our greatest guiding principle is stare decisis. *See Dunn v. Pate*, 334 N.C. 115, 118, 431 S.E.2d 178, 180 (1993). Stare decisis means once a principle of law has been settled, "it is binding on the courts and should be followed in similar cases." *State v. Ballance*, 229 N.C. 764, 767, 51 S.E.2d 731, 733 (1949). Stare decisis stands for the age-old axiom: "the law must be characterized by stability if men are to resort to it for rules of conduct." *Id*. at 767, 51 S.E.2d at 733. We are bound by previous

cases decided by this Court, "unless it has been overturned by a higher court." *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). And we must adhere to stare decisis—even if the prior decision is not faithful to the text of a statute. *See id.* at 384, 379 S.E.2d at 37.

In *State v. Garrett*, we interpreted the 2016 version of subsection 90-95(h)(4) and determined whether the subsection proscribed the transportation or possession of "opioids." 277 N.C. App. 493, 497, 860 S.E.2d 282, 286 (2021). As we said then, subsection 90-95(h)(4) "made it unlawful to possess or transport 'four grams or more of opium or opiate, or any salt, compound, derivative, or preparation of opium or opiate . . . , including heroin, or any mixture containing such substance.'" *Id.* at 497, 860 S.E.2d at 286 (quoting N.C. Gen. Stat. § 90-95(h)(4) (2016)).

Recognizing the word "opioid" was not included in the text of the subsection, we nonetheless concluded that opioids, like fentanyl, "indeed qualify as an opiate within the meaning of the statute." *Id.* at 497–98, 860 S.E.2d at 286. We reasoned that an opioid is "a highly addictive substance that produces effects that are similar to those of morphine by acting on the opiate cell receptors in the brain." *Id.* at 499–500, 860 S.E.2d at 287. In other words, we held that possession of opioids violates subsection 90-95(h)(4). *See id.* at 500, 860 S.E.2d at 288; N.C. Gen. Stat. § 90-95(h)(4).

The 2017 version of subsection 90-95(h)(4) preserved the same language as the 2016 version: The 2017 version prohibited the possession or transportation of "four grams or more of opium or opiate, or any salt, compound, derivative, or preparation

of opium or opiate . . . , including heroin, or any mixture containing such substance."
N.C. Gen. Stat. § 90-95(h)(4) (2017) (applying to possession occurring on 8 November
2018, the date of Defendant's alleged possession).  Because the 2017 statute is the
same statute interpreted by the *Garrett* Court, the 2017 statute includes opioids.  *See*
*Garrett*, 277 N.C. App. at 499–500, 860 S.E.2d at 287; *In re Civil Penalty*, 324 N.C. at
384, 379 S.E.2d at 37.

Here, the State charged Defendant with violating the 2017 version of
subsection 90-95(h)(4), and the State provided expert testimony that Defendant
possessed hydrocodone, an opioid.  This evidence is substantial because it "is such
relevant evidence as a reasonable mind might accept as adequate" to show that
Defendant possessed opioids.  *See Smith*, 300 N.C. at 78, 265 S.E.2d at 169.

Because opioids like hydrocodone "qualify as an opiate within the meaning of
the statute," *see Garrett*, 277 N.C. App. at 497, 860 S.E.2d at 286, the State presented
"substantial evidence (1) of each essential element of the offense charged . . . , and (2)
of defendant's being the perpetrator of such offense."  *See Fritsch*, 351 N.C. at 378,
526 S.E.2d at 455; N.C. Gen. Stat. § 90-95(h)(4).  Therefore, the trial court did not err
in denying Defendant's motion to dismiss concerning subsection 90-95(h)(4).

The Dissent, however, argues that we are not bound by *Garrett* because there,
we interpreted the 2016 version of subsection 90-95(h)(4), and here, Defendant was
convicted under the 2017 version of subsection 90-95(h)(4).  Accordingly, the Dissent
states that "additional consideration of legislative intent would be inappropriate."

First, we agree with the Dissent concerning legislative intent, and we do not consider it. *See Conroy v. Aniskoff*, 507 U.S. 511, 519, 113 S. Ct. 1562, 1567, 123 L. Ed. 2d 229, 238 (1993) (Scalia, J., concurring) ("We are governed by laws, not by the intentions of legislators.").

But we disagree with the Dissent's position on *Garrett* and stare decisis. *See In re Civil Penalty*, 324 N.C. at 384, 379 S.E.2d at 37. According to the Dissent, we are not bound by *Garrett* because we have yet to interpret the 2017 version of subsection 90-95(h)(4). Not so. The date of the statute is not dispositive because, as the Dissent notes, the 2016 language of subsection 90-95(h)(4) is identical to the 2017 language of subsection 90-95(h)(4). And when "judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates" that the same interpretation applies. *See Bragdon v. Abbott*, 524 U.S. 624, 645, 118 S. Ct. 2196, 2208, 141 L. Ed. 2d 540, 562 (1998).

Nonetheless, the Dissent would hold contrary to *Garrett* because other statutes "read in concert with N.C.G.S. § 90-95(h)(4), materially alter the meaning of the 2017 statute from the 2016 statute." If this was a case of first impression, we could agree. *See W. Va. Univ. Hosps. v. Casey*, 499 U.S. 83, 100, 111 S. Ct. 1138, 1148, 113 L. Ed. 2d 68, 84 (1991) ("Where a statutory term *presented to us for the first time* is ambiguous, we construe it to contain that permissible meaning which fits most logically and comfortably into the body of both previously and subsequently enacted

law.") (emphasis added). But this is not a case of first impression. *See Garrett*, 277 N.C. App. at 497, 860 S.E.2d at 286.

We could also agree with the Dissent if the General Assembly changed the actual language of subsection 90-95(h)(4), or if the General Assembly changed the definition of opiate to include language like "does not include opioids" or "does not include hydrocodone." The General Assembly did neither. So instead, we follow the lead of Scalia and Garner:

> A clear, authoritative judicial holding on the meaning of a particular provision should not be cast in doubt and subjected to challenge whenever a related though not utterly inconsistent provision is adopted in the same statute or even in an affiliated statute. Legislative revision of law clearly established by judicial opinion ought to be by express language or by unavoidably implied contradiction.

ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 331 (2012).

There is no express revision of subsection 90-95(h)(4). *See* N.C. Gen. Stat. § 90-95(h)(4). And while the *Garrett* Court's interpretation of subsection 90-95(h)(4) is broad, it does not create an unavoidable contradiction with the added definition of opioid. *See* N.C. Gen. Stat. § 90-87(18a) (defining "opioid" in 2017). Under *Garrett*, "opiate" includes opioids, *see Garrett*, 277 N.C. App. at 497, 860 S.E.2d at 286, and the only difference between 2016 and 2017 is that the General Assembly defined opioid, *see* N.C. Gen. Stat. § 90-87(18a). But the General Assembly did not change, let alone narrow, the definition of opiate. *See id.* § 90-87(18). Therefore, "opiate"

continues to encompass opioids, *see Garrett*, 277 N.C. App. at 499–500, 860 S.E.2d at 287; only now, opioids are statutorily defined, *see* N.C. Gen. Stat. § 90-87(18a).

We echo the Dissent's proposition: "additional consideration of legislative intent would be inappropriate." The Dissent, however, proceeds to consider the legislature's intent. The Dissent argues that by defining "opioid," the General Assembly *intended* for "opiate" to no longer encompass opioids. If we were operating on a clean slate, maybe so. But again, we are not. *See Garrett*, 277 N.C. App. at 497, 860 S.E.2d at 286. In our view, if the General Assembly wanted to override the *Garrett* Court's interpretation of subsection 90-95(h)(4), it needed to do so explicitly. *See* SCALIA & GARNER, *supra.* Otherwise, we are merely grasping for legislative intent—and ignoring binding precedent. *See In re Civil Penalty*, 324 N.C. at 384, 379 S.E.2d at 37; *Garrett*, 277 N.C. App. at 497, 860 S.E.2d at 286.

If we follow the Dissent's approach, each year is a clean slate for statutory interpretation—even if a statute's language remains the same. *See* N.C. Gen. Stat. § 90-95(h)(4). This would reduce stare decisis to a nullity. We think that until the General Assembly explicitly amends subsection 90-95(h)(4) or the definition of opiate, or until our state Supreme Court overrules *Garrett*, we are bound by *Garrett*. Accordingly, the trial court did not err in denying Defendant's motion to dismiss concerning subsection 90-95(h)(4).

**B. Jury Instruction**

Defendant next argues the trial court erred when, over Defendant's objection, it instructed the jury that opioids were included in the definition of "opium or opiate" under subsection 90-95(h)(4). We disagree.

This Court reviews the legality of jury instructions de novo. *State v. Barron*, 202 N.C. App. 686, 694, 690 S.E.2d 22, 29 (2010). Again, under a de novo review, this Court "'considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *Williams*, 362 N.C. at 632–33, 669 S.E.2d at 294 (quoting *In re Greens of Pine Glen, Ltd. P'ship*, 356 N.C. at 647, 576 S.E.2d at 319). And concerning jury instructions, "[i]t is the duty of the trial court to instruct the jury on the law applicable to the substantive features of the case arising on the evidence . . . ." *State v. Robbins*, 309 N.C. 771, 776–77, 309 S.E.2d 188, 191 (1983).

Here, the trial court did not err by instructing the jury that opioids were included in the definition of "opium or opiates" because, as detailed above, this Court has so held. *See Garrett*, 277 N.C. App. at 497, 860 S.E.2d at 286; N.C. Gen. Stat. § 90-95(h)(4). Accordingly, the trial court did not err in its jury instruction because it accurately instructed the jury on the applicable law. *See Robbins*, 309 N.C. at 776–77, 309 S.E.2d at 191.

**C. Sentencing**

Lastly, Defendant argues the trial court improperly considered his rejection of the State's plea offer and additional drug activity during sentencing, violating his constitutional rights. Again, we disagree.

"'[A]n error at sentencing is not considered an error for the purpose of N.C. Rule 10 (b)(1) of the North Carolina Rules of Appellate Procedure' and therefore no objection is required to preserve the issue for appellate review." *State v. Jeffrey*, 167 N.C. App 575, 579, 605 S.E.2d 672, 674 (2004) (quoting *State v. Hargett,* 157 N.C. App. 90, 92, 577 S.E.2d 703, 705 (2003)). So, we review constitutional sentencing issues de novo, regardless of whether the defendant objected at trial. *See State v. Harris*, 242 N.C. App. 162, 164, 775 S.E.2d 31, 33 (2015). And under a de novo review, this Court "'considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *Williams*, 362 N.C. at 632–33, 669 S.E.2d at 294 (quoting *In re Greens of Pine Glen, Ltd. P'ship*, 356 N.C. at 647, 576 S.E.2d at 319).

"A sentence within the statutory limit will be presumed regular and valid." *State v. Boone*, 293 N.C. 702, 712, 239 S.E.2d 459, 465 (1977). This presumption, however, is not conclusive. *Id*. at 712, 239 S.E.2d at 465. "If the record discloses that the court considered irrelevant and improper matter in determining the severity of the sentence, the presumption of regularity is overcome, and the sentence is in violation of defendant's rights." *Id*. at 712, 239 S.E.2d at 465.

In *Boone*, the trial court "indicated that the sentence imposed was in part induced by defendant's exercise of his constitutional right to plead not guilty and demand a trial by jury." *Id*. at 712, 239 S.E.2d at 465. And as a result, the *Boone* Court "remanded for entry of a proper judgment, without consideration of defendant's refusal to plead guilty to a lesser offense." *Id*. at 713, 239 S.E.2d at 465. Similarly,

this Court has held that a sentence violates a defendant's rights if the trial court specifically comments on the refusal of a plea deal. *See, e.g., State v. Cannon*, 326 N.C. 37, 39–40, 387 S.E.2d 450, 451 (1990) (reversing the trial court's sentence because "the trial judge stated his intended sentence even before the evidence was presented to the jury on the issue of guilt").

By contrast, if "the record reveals no such express indication of improper motivation," and the trial court instead "merely prefaced its pronouncement of defendant's sentences with the statement, routinely made at sentencing, that it had, *inter alia*, considered the arguments of counsel," then the sentence imposed will not violate a defendant's rights. *State v. Johnson*, 320 N.C. 746, 753, 360 S.E.2d 676, 681 (1987).

Here, Defendant failed to overcome the presumption of regularity and validity in the trial court's sentencing. *See Boone*, 293 N.C. at 712, 239 S.E.2d at 465. Although the State mentioned Defendant's failure to accept a plea offer, there is no evidence in the record that the trial court specifically commented on or considered the refusal. Accordingly, there is no evidence that the trial court improperly considered Defendant's rejection of the plea offer, so the trial court's sentencing was valid. *See Johnson*, 320 N.C. at 753, 360 S.E.2d at 681.

Moreover, the record reflects the trial court's comment concerning the additional drug activity during sentencing was only in immediate response to the

State, which mentioned the event. The trial court's only comment on the additional drug activity was a clarifying question about the date of the alleged activity.

This exchange does not support Defendant's argument that the trial court considered irrelevant and improper matter in determining the severity of the sentence. *See id.* at 753, 360 S.E.2d at 681. As no evidence suggests that the trial court considered the additional drug activity when it sentenced Defendant, the trial court did not error in sentencing Defendant to two consecutive sentences for his multiple offenses. *See id.* at 753, 360 S.E.2d at 681.

## V. Conclusion

We hold that the trial court did not err by denying Defendant's motion to dismiss his charge under subsection 90-95(h)(4), instructing the jury that opioids were included in the definition of "opium or opiate" at the time of the offense, or by considering evidence of improper factors at sentencing.

NO ERROR.

Judge ZACHARY concurs

Judge MURPHY dissents in a separate opinion.

MURPHY, Judge, dissenting.

I dissent from the Majority's holding that our interpretation of N.C.G.S. § 90-95(h)(4) (2017) is bound by our earlier interpretation of N.C.G.S. § 90-95(h)(4) (2016) in *State v. Garrett*.

The Majority holds that "the 2017 statute is the same statute interpreted by *Garrett* Court," and, accordingly, "the 2017 statute includes opioids." It is true that both N.C.G.S. § 90-95(h)(4) (2016) and N.C.G.S. § 90-95(h)(4) (2017) read, in pertinent part, as follows:

> Any person who sells, manufactures, delivers, transports, or possesses four grams or more of opium or opiate, or any salt, compound, derivative, or preparation of opium or opiate (except apomorphine, nalbuphine, analoxone and naltrexone and their respective salts), including heroin, or any mixture containing such substance, shall be guilty of a felony which felony shall be known as "trafficking in opium or heroin. . . ."

N.C.G.S. § 90-95(h)(4) (2017). However, the 2016 and 2017 versions of the statute differ substantially in meaning, as a plain reading of N.C.G.S. § 90-87 (2017), defining terms "[a]s used in this Article[,]" provides different definitions for "opiates" and "opioids," which are not present in N.C.G.S. § 90-87 (2016).

"Where . . . the statute, itself, contains a definition of a word used therein, that definition controls, however contrary to the ordinary meaning of the word it may be." *In re Clayton-Marcus Co.*, 286 N.C. 215, 219 (1974). Despite the clear application of the "definitions" in N.C.G.S. § 90-87 to the whole Article, and despite the clear change

between the 2016 and 2017 statutes' definitions, the Majority characterizes the 2017

statute as nothing more than a "repetition of the same language" used in the 2016

statute.

For the purposes of the 2016 statute, the following definition applied to the

term "opiate":

> (18) "Opiate" means any substance having an addiction-forming or addiction-sustaining liability similar to morphine or being capable of conversion into a drug having addiction-forming or addiction-sustaining liability. It does not include, unless specifically designated as controlled under G.S. 90-88, the dextrorotatory isomer of 3-methoxy-n-methyl-morphinan and its salts (dextromethorphan). It does include its racemic and levorotatory forms.

N.C.G.S. § 90-87(18) (2016).

However, for the purposes of the 2017 statute, the following definitions applied

to the terms "opiate" and "opioid":

> (18) "Opiate" means any substance having an addiction-forming or addiction-sustaining liability similar to morphine or being capable of conversion into a drug having addiction-forming or addiction-sustaining liability. It does not include, unless specifically designated as controlled under G.S. 90-88, the dextrorotatory isomer of 3-methoxy-n-methyl-morphinan and its salts (dextromethorphan). It does include its racemic and levorotatory forms.
>
> (18a) "Opioid" means any synthetic narcotic drug having opiate-like activities but is not derived from opium.

N.C.G.S. § 90-87(18), (18a) (2017).

These definitions, read in concert with N.C.G.S. § 90-95(h)(4), materially alter

2

the meaning of the 2017 statute from the 2016 statute. As we have not yet interpreted how the altered definitions which apply to the 2017 version of the statute may impact the meaning of that statute, *stare decisis* does not apply to our decision in *Garrett*, and we must give effect to the statute's plain meaning. *Fid. Bank v. N.C. Dep't of Revenue*, 370 N.C. 10, 18 (2017) ("When the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required."); *see also State v. Camp*, 286 N.C. 148, 152 (1974).

Unlike the 2017 statute, the 2016 statute, which governed the meaning of "opiate" in *Garrett*, did *not* distinguish between the definitions of "opiates" and "opioids." *See* N.C.G.S. §§ 90-87(17)-(19) (2016). In fact, the statute in effect on the date of the commission of the offense in *Garrett* did not mention the word "opioids" at all. *Id.* In the absence of any mention of "opioids" in the statute defining categories of controlled substances, it was unclear whether the term "opiate" in N.C.G.S. § 90-95(h)(4) was intended to be inclusive of "opioids." Consequently, we determined that the statute was ambiguous as to the meaning of "opiate." *Garrett*, 277 N.C. App. at 500 ("Here, the meaning of the term 'opiate' as used in [N.C.G.S.] § 90-95(h)(4) in 2016 was ambiguous, as it was susceptible to more than one reasonable interpretation."). When interpreting an ambiguous statute, we look not only to the language, but also to the "purpose of the statute and the intent of the legislature in its enactment" to give the statute its appropriate meaning. *Fid. Bank*, 370 N.C. at

18. In *Garrett*, we looked outside of the statutory text to determine the General Assembly's intended meaning of the term "opiate" and ultimately concluded that fentanyl qualified as an opiate, despite being a synthetic opi*oid* within the meaning of N.C.G.S. § 90-95(h)(4) (2016), because the General Assembly intended for the definition of "opiate" to be construed broadly. *Garrett*, 277 N.C. App. at 497-500.

Here, however, two distinct definitions unambiguously separate "opioids" from "opiates," and additional consideration of legislative intent would be inappropriate. According to the plain language of N.C.G.S. § 90-87 and N.C.G.S. § 90-95 in 2017, it is unambiguous that Defendant's alleged conduct did not constitute a violation of the trafficking statute under which he was charged and convicted. Our General Assembly's distinction in N.C.G.S. § 90-87 between these two categories of substances indicates that "opioids" such as the hydrocodone tablets are not synonymous with the "opiates" or "opium" then encompassed by N.C.G.S. § 90-95(h)(4).

When the "plain reading of [a] statute creates a [perceived] loophole" that seems to contradict the legislature's intended purpose, it is not this Court's role to remedy this loophole. *Wake Radiology Diagnostic Imaging LLC v. N.C. Dep't of Health & Human Servs.*, 279 N.C. App. 673, 675 (2021). In *Wake Radiology*, we held such a loophole "is not a concern for this Court. We interpret the law as it [was] written. If that interpretation results in an unintended loophole, it is the legislature's role to address it." *Id.*

The 2016 statute we interpreted in *Garrett* is not identical to the 2017 statute which we are called upon to interpret in this case. Accordingly, the principle of *stare decisis* does not apply, and our holding in *Garrett* does not bind our holding here. It is clear from the plain statutory language in the 2017 statute that "opioids" were to be differentiated from "opiates." Although the State does not raise any argument as to the public policy impact of interpreting N.C.G.S. § 90-95(h)(4) not to encompass Defendant's conduct between 1 December 2017 and 30 November 2018, to the extent that such impact might be present, it is not our role to remedy this loophole.

I would reverse the trial court's denial of Defendant's motion to dismiss the trafficking in opium by possession charge and vacate Defendant's conviction for this offense based on the State's failure to provide substantial evidence that the acetaminophen-hydrocodone tablets seized from Defendant's house constituted "opium" or "opiates." Accordingly, I would dismiss Defendant's argument regarding the trial court's jury instruction on the trafficking in opium by possession charge as moot. *See State v. Angram*, 270 N.C. App. 82, 88 (2020) ("Because we must reverse the judgment, we need not address [the] defendant's other issue on appeal.").

Finally, Defendant only raises prejudicial concerns regarding the trial court's alleged consideration of improper sentencing factors based on its decision not to consolidate Defendant's trafficking judgments and to run Defendant's sentences consecutively rather than concurrently. Defendant does not claim to have suffered any other prejudice at sentencing. Reversal of Defendant's conviction for trafficking

in opium by possession would resolve any alleged prejudice caused by running his sentences consecutively or by declining to consolidate his judgments, as Defendant would remain sentenced on a single conviction. Therefore, I would dismiss this argument as moot. *Cf. State v. Wright*, 342 N.C. 179, 181 (1995) (holding that a defendant sentenced to life imprisonment could not have been prejudiced by any alleged errors for which the only prejudicial impact would be to render capital punishment inappropriate).

I respectfully dissent.